UNITED STATES of America,
Plaintiff-Appellee,

v.

Harold Joseph ROSENTHAL, et
al., Defendants,

Pacific and Southern Company, Inc.
d/b/a WXIA–TV, Movant-Appellant.

No. 84–8728.

United States Court of Appeals,
Eleventh Circuit.

June 21, 1985.

Frank Love, Jr., V. Robert Denham, Jr., Atlanta, Ga., for movant-appellant.

Steven R. Wisebram, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Thomas B. Gary, Court Appointed, Atlanta, Ga., for special amicus curiae.

Before FAY and ANDERSON, Circuit Judges, and GIBSON *, Senior Circuit Judge.

R. LANIER ANDERSON, III, Circuit Judge:

This case involves the public availability of material intercepted by wiretap pursuant to Title III of the Federal Omnibus Crime Control & Safe Streets Act of 1968, as amended, 18 U.S.C.A. § 2510, *et seq.* ("Title III"). The district court held that appellant Pacific and Southern Company, Inc. ("WXIA–TV") could not under any circumstances have access to wiretap information acquired legally under Title III and admitted into evidence in open court. We disagree and, thus, vacate and remand for proceedings consistent with this opinion.

## BACKGROUND

WXIA–TV's request for access to the Title III materials arose during the course of a multi-count criminal action brought by the United States against Harold Rosenthal and other defendants indicted on charges of drug smuggling, conspiracy, and racketeering. *See United States v. Rosenthal, et al,* C.R. 84–14A (N.D.Ga. filed Jan. 19, 1984). Trial began on August 20, 1984, against 10 of the 30 indicted defendants.[1] During the trial, the United States introduced a great deal of documentary and physical evidence including audiotapes which were legally intercepted pursuant to Title III. The Title III audiotapes had been played in open court and transcripts of the tapes had been provided to the jury. On August 27, 1984, WXIA–TV filed a "Motion for Access" for permission to review and copy all documentary and physical evidence, including the Title III materials, which had already been admitted into evidence or which would be admitted for the remainder of the trial.

On September 4, 1984, the district court issued its order. Noting its responsibility to protect the physical integrity of documentary evidence and to fairly and efficiently administer a highly complex criminal trial, the court denied WXIA–TV's motion for complete and immediate access to the non-Title III materials. With respect to all the documents except the Title III tapes, the court entered its order without prejudice to WXIA–TV's right to gain access to these materials if in the view of the district court clerk such access could be arranged without straining the facilities or personnel of the court and without interrupting the progress of the trial. With respect to Title III audiotapes and transcripts, the district court flatly denied access under any circumstances. The court reasoned that Title III's express concern with an individual's right to privacy militated against access to legally acquired Title III materials even where such materials had been admitted into evidence in a court proceeding. Because Title III does not explicitly authorize the access WXIA–TV sought, the court held, Congress intended to prohibit such access. WXIA–TV appeals this holding.[2]

## DISCUSSION

■ Subsequent to the issuance of the district court order, WXIA–TV apparently was able to gain access to the non-Title III evidence. The only issue on appeal is the district court's ruling with respect to the Title III materials. We must begin our

---

* Honorable Floyd R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. The cases of some of the other defendants were severed, and other indicted defendants remained fugitives. Record, vol. 2 at 299 (district court order at 1).

2. WXIA–TV's appeal came to this court unopposed by any of the defendants in the underlying criminal action or the United States. On November 30, 1984, the United States filed with this court a response to WXIA–TV's brief stating that "[t]he United States does not take the position that Title III precludes access to videotapes and transcripts after they have been admitted in evidence." Response of the United States to Brief of Appellant at 2 (The reference to "videotapes" necessarily must refer to audiotapes since videotapes are not among the materials sought in this appeal). On February 4, 1985, this court appointed T. Bart Gary as *amicus curiae* in support of the judgment of the district court. Accordingly, Mr. Gary submitted a brief and presented oral argument in support of the district court's judgment.

discussion by recognizing the presumptive common law right to inspect and copy judicial records. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). "This right, like the right to attend judicial proceedings, is important if the public is to appreciate fully the often significant events at issue in public litigation and the workings of the legal system." *Newman v. Graddick,* 696 F.2d 796, 803 (11th Cir. 1983). The district court held, nevertheless, that the privacy concern expressed in Title III indicates Congress' intent that the type of materials admitted into evidence in this case not be disclosed beyond the courtroom. It is no doubt true that Title III addressed itself to such privacy concerns. It broadly bans the interception and disclosure of wire or oral communications. *See* 18 U.S.C.A. § 2511. Furthermore, Title III provides criminal and civil penalties to enforce its anti-wiretap provisions. *See id.* at §§ 2511, 2520. Finally, Title III fashions an "exclusionary rule" forbidding the use of intercepted wire or oral communications as evidence in any court or agency proceeding "if the disclosure of that information would be in violation of this chapter." *Id.* at § 2515. On the other hand, Title III does provide procedures to authorize interceptions, and for the subsequent use and disclosure of such authorized interceptions. *See id.* at §§ 2516–2518. Federal and state law enforcement officers are required to present detailed applications to either federal or state judges of competent jurisdiction requesting permission to intercept communications. *Id.* at §§ 2516, 2518. The statutory requirements are stringent and detailed, and an application may only be sought to obtain evidence with respect to certain serious crimes. *Id.;* S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112, 2153–54; *see also id.* at 2157 ("The major purpose of Title III is to combat organized crime"). Finally, Title III specifically provides for the use of properly intercepted materials in court proceedings.

Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of the United States or of any State....

18 U.S.C.A. § 2517.

The materials at issue in this appeal were legally intercepted pursuant to Title III and admitted into evidence under the authority of the above-quoted statutory language. Once this has taken place, there is no indication either in Title III or its legislative history to support the district court's conclusion that Title III material may not be further disclosed. The privacy interests expressed in Title III have been overborn by the statute itself which has determined that wiretapping is permissible under these circumstances and that disclosure in open court is appropriate. Since the audiotapes were played in open court and admitted into evidence, we can perceive of no legitimate reason to create an absolute bar of further dissemination of these materials.

Our conclusion is supported by the decisions in *United States v. Dorfman,* a series of proceedings which bear on the issue of public accessibility to Title III materials. Two of the *Dorfman* decisions are directly relevant to our inquiry. In *United States v. Dorfman,* 690 F.2d 1230 (7th Cir.1982), the Seventh Circuit, in dicta, indicated that broad disclosure would be permissible once Title III materials were admitted into evidence.

*Title III will not prevent the public from reading the transcripts of any of the wiretap evidence that is presented in the criminal trial.* All it will prevent is public access to wiretap evidence that the district court lawfully sealed in order to protect the privacy of the defendants.... The district court [then] held in this case that most of the wiretap evidence the government had obtained was obtained lawfully. Such evidence is admissible in the criminal trial against

the appellants provided that it meets the other requirements for admissibility imposed by the Federal Rules of Evidence. *To the extent that it is admissible and actually admitted, it will lawfully diminish the appellants' privacy.* But this appeal concerns wiretap materials that may never be presented at the trial. No law enforcement interest requires that this evidence be made public.... [Thus, the materials are] private documents *unless and until admitted into evidence at a trial or other public proceeding described in section 2517(3).*

*Id.* at 1234 (emphasis added).[3] This dicta was confirmed in a later proceeding of the same case. *United States v. Dorfman,* 8 Media L.Rep. (BNA) 2372 (7th Cir.1982).[4] In that proceeding, as in the instant case, "the intervenors filed an application in the district court seeking permission to copy audiotape evidence that is introduced during the upcoming trial in this case." *Id.* at 2372. Recognizing the "strong presumption in favor of the common law right of access to judicial records," *id.* at 2373, quoting *United States v. Edwards,* 672 F.2d 1289, 1290 (7th Cir.1982), the court concluded that "Title III imposes no independent restriction on the dissemination of information that enters the public domain in [a] manner" deemed permissible under the statute. 8 Media L.Rep. (BNA) at 2373.

The Title III tapes at issue here were introduced into evidence in open court pursuant to the express authority of the statute. Congress is presumed to know the law that there is a presumptive right in the public to have access to and copy judicial records.

■ Thus, we hold that Title III creates no independent bar to the public's right of access to judicial materials with respect to wiretap materials legally intercepted and admitted into evidence pursuant to the statute.

■ Nevertheless, "[t]he right to inspect and copy records is not absolute...." *Newman v. Graddick, supra,* 696 F.2d at 803, citing *Nixon v. Warner Communications, Inc.,* 435 U.S. at 598, 98 S.Ct. at 1312. "As with any other form of access, it may interfere with the administration of justice and hence may have to be curtailed." 696 F.2d at 803. While the presumption in favor of the common law right of access must always be kept in mind, the trial court may properly balance this right against important competing interests. This court has recently summarized these competing interests as follows:

The Supreme Court has indicated a number of relevant factors in the balancing test. [The] district courts [should] look to whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records.

*Newman v. Graddick,* 696 F.2d at 796, citing *Nixon v. Warner Communications, Inc.,* 435 U.S. at 598–603 & n. 11, 98 S.Ct. at 1312–1315 & n. 11. The court may also

---

3. *See also Dowd v. Calabrese,* 101 F.R.D. 427, 435 (D.D.C.1984) (following *Dorfman* dicta; case concerned request by criminal defendants for access to *Dorfman* wiretap material).

4. As *amicus curiae* accurately points out, this second *Dorfman* opinion was not published in the official Federal Reporter and, therefore, may not, pursuant to Seventh Circuit Rule 35, be cited or given precedential value in any federal court sitting in the Seventh Circuit. *See* 7th Cir.R. 35(b)(2)(iv), *reprinted in* 28 U.S.C.A. Rules (West 1980). We are, of course, not bound by the Seventh Circuit's rules of court

and note that any decision of another circuit, published or unpublished, is only of persuasive value. Moreover, we note that the second *Dorfman* decision is important not only because it decided a controversy substantially identical to that presented by the instant case, but also because it reinforced strong dicta expressed in the court's prior published decision. *United States v. Dorfman,* 690 F.2d 1230, 1234 (7th Cir.1982) (discussed in text). *Cf. Howell v. Schweiker,* 699 F.2d 524, 526–27 (11th Cir.1983) (in the Eleventh Circuit, unpublished opinions are binding precedent).

consider, as the trial court noted, whether the administrative difficulties in providing access would disrupt the progress of the trial. *United States v. Edwards*, 672 F.2d 1289, 1296 (7th Cir.1982).[5] The proper balancing of the foregoing factors is a matter which is vested in the first instance in the sound discretion of the trial court. *Newman v. Graddick*, 696 F.2d at 803.

█ In light of the foregoing, we vacate the district court's order and remand the case for a determination of whether WXIA–TV should be granted access in the circumstances of this case. The trial court should bear in mind that the materials may not be withheld simply because they were legally intercepted pursuant to Title III. We note in this regard that WXIA–TV has already been granted access to the non-Title III materials admitted into evidence in the criminal proceeding. Nevertheless, the district court is entitled to take into account other factors such as the pendency of related criminal cases and the relative importance to such related cases of the Title III evidence.

VACATED and REMANDED.

---

**5.** Of course, the ability of the defendant to get a fair trial if access is granted is the primary ultimate value to be weighed on the non-access side of the balance. *See generally Chandler v. Florida*, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981). The *Chandler* court, considering the constitutional propriety of televising criminal trials, generally struck the balance in favor of public access:

The risk of juror prejudice is present in any publication of a trial, but the appropriate safeguard against such prejudice is the defendant's right to demonstrate that the media's coverage of his case—be it printed or broadcast—compromised the ability of the particular jury that heard the case to adjudicate fairly.

*Id.* at 575, 101 S.Ct. at 810. We note in this regard that media access to videotapes was granted in some of the so-called "Abscam" cases. *See, e.g., In re Application of National Broadcasting Company, Inc.*, 635 F.2d 945 (2d Cir.1980) (TV networks were permitted to copy videotapes of "Abscam" defendants even though prosecution was in progress and juries were soon to be chosen in related cases). *But cf. Belo Broadcasting Corp. v. Clark*, 654 F.2d 423 (5th Cir. Unit A 1981) (affirming denial of access to audiotapes admitted into evidence because of concern with right to fair trial of defendant who had not yet been tried).