UNITED STATES of America, Appellee,

v.

**Sorkis WEBBE, Jr., et al., Defendants,**

**CBS, Inc., d/b/a KMOX–TV,
Channel 4, Appellant.**

**Nos. 85–2467, 85–2468.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 12, 1986.
Decided May 15, 1986.

Allen S. Boston, St. Louis, Mo., for appellant.

James E. Crowe, Jr., St. Louis, Mo., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOODS, District Judge.*

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

FLOYD R. GIBSON, Senior Circuit Judge.

CBS Inc. (CBS) appeals from the district court's [1] denial of its application requesting permission to copy portions of audio tapes admitted into evidence in the trial of Sorkis Webbe, Jr., and others for mail fraud. CBS, which made the application on behalf of KMOX–TV, its St. Louis station, and KTVI–TV and KSDK–TV, intended to broadcast the tapes to the public. We affirm the district court's denial of CBS' application.

## I. BACKGROUND

Sorkis Webbe, Jr. and three other defendants were tried from October 21, 1985 through November 14, 1985, on charges of vote fraud and obstruction of justice. Webbe has served as Alderman for the Seventh Ward of the City of St. Louis and as Democratic Party Committeeman for the Seventh Ward. Admitted into evidence at trial were audiotapes, made pursuant to Title III of the Federal Omnibus Crime Control & Safe Streets Act of 1968, 18 U.S.C. § 2511 *et seq.,* of conversations taking place at the Mayfair Hotel in St. Louis. Webbe was the president and general manager of the Mayfair. During the trial, CBS applied to the district court to copy those audiotapes admitted into evidence. By order of November 8, 1985, the district court denied CBS' application. The court, declining to adopt the holdings of other circuit courts of appeals that a strong presumption exists in favor of public access to judicial records, held that Webbe's constitutional rights to a fair trial were paramount to the media's common law right of access. The court noted that the press had not been excluded from the trial and had received transcripts of the tapes; that Webbe was a public figure with other charges pending against him; and that the jury selection in the instant case had been difficult.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

On November 14, 1985 the jury returned guilty verdicts against the four defendants. Three of those defendants, including Webbe, have appealed their convictions to this court. On December 9, 1985, CBS filed this appeal of the district court's denial of its application. Subsequently, on December 18, 1985, Webbe pleaded guilty in the cases pending against him: No. 83–228 CR C1, charging Webbe with harboring a fugitive, and No. SI–84–207 CR C1, charging Webbe and five others with conspiracy and mail fraud relating to the awarding of a cable television franchise in St. Louis. The cable television case is still pending against four remaining defendants.

## II. DISCUSSION

On appeal CBS argues that the district court erred in denying its application to copy the audiotapes in question because it has a constitutional and common law right to copy the tapes. CBS contends that its constitutional right of access emanates from the First Amendment right of the public and the press to observe the judicial process. In arguing that its common law right to inspect and copy judicial records mandates access here, CBS cites *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978), as well as several federal appellate decisions recognizing a strong presumption in favor of the common law right. *See United States v. Guzzino*, 766 F.2d 302, 304 (7th Cir.1985); *United States v. Criden*, 648 F.2d 814, 823 (3rd Cir.1981); *In re National Broadcasting Co. (United States v. Jenrette)*, 653 F.2d 609, 613 (D.C. Cir.1981) ("[A]ccess may be denied only if the district court, after considering 'the relevant facts and circumstances of the particular case,' and after 'weighing the interests advanced by the parties in light of the public interest and the duty of the courts,' concludes that 'justice so requires' "); *In re National Broadcasting Co. (United States v. Myers )*, 635 F.2d 945,

952 (2d Cir.1980) ("once the evidence has become known to the public, including * * representatives of the press, through their attendance at a public session of court, it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence, when it is in a form that readily permits sight and sound reproduction").

CBS urges this court to follow those circuits that have recognized a strong presumption in favor of access, in order to promote the public interest in overseeing the integrity of its political institutions, and to enhance the public's opportunity to judge both the case on trial and the judicial process. Further, CBS contends that the district court impermissibly based its denial of CBS' application on the possibility of harm to Webbe's fair trial rights, rather than on actual prejudice. Finally, CBS states that the transcripts of the tapes distributed by the court do not satisfy the right of access, particularly because at least one line of the transcript is disputed by the parties.[2]

■ We affirm the district court's denial of CBS' application. CBS' argument that its right of access to the tapes is guaranteed by the First Amendment was rejected by the Supreme Court in *Nixon*, 435 U.S. at 608–09, 98 S.Ct. at 1317–18. In *Nixon*, the Court held that neither the First Amendment guarantee of freedom of the press nor the Sixth Amendment guarantee of a public trial supported the respondents' claim to access to audiotapes, when the press had enjoyed unrestricted access to all of the information in the public domain, including the tape transcripts. The First Amendment, the Court reasoned, gave the press "no right to information about a trial superior to that of the general public," which itself had never had physical access to the tapes. *Id.* at 609.

**2.** CBS cites only one instance in which the parties offered contradictory interpretations as to what was said on the tapes. In that instance the Government contended that Webbe instructed others to "unseal the ballots bring them to me." The defendants, however, distributed transcripts interpreting the line as "no, go seal the ballots, bring them to me."

CBS does possess, as it has pointed out, the *common law* right of access to judicial records recognized in *Nixon, id.* at 597, 98 S.Ct. at 1311. Although the Court in *Nixon* discussed the common law right of access in some detail, it ultimately concluded that the administrative procedure set up by Congress in the Presidential Recordings Act for the processing and public release of the Watergate tapes "tip[ped] the scales in favor of denying release." *Id.* at 605–06, 98 S.Ct. at 1316. The common law right of access to judicial records is not absolute, *id.* at 598, 98 S.Ct. at 1312; *In re Applications of Kansas City Star,* 666 F.2d 1168, 1176 (8th Cir.1981), and "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon,* 435 U.S. at 599, 98 S.Ct. at 1312–13; *United States v. Rosenthal,* 763 F.2d 1291, 1295 (11th Cir.1985); *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 430–31 (5th Cir.1981).

We conclude that the district court did not abuse its discretion in denying CBS' application to copy the tapes in question. We decline to adopt in toto the reasoning of the Second, Third, Seventh, and District of Columbia Circuits in recognizing a "strong presumption" in favor of the common law right of access. We think the common law requires access to information on judicial proceedings and all evidence of record (unless ordered sealed), but this right does not necessarily embrace copying of tapes. We favor the approach of the Fifth Circuit in *Belo Broadcasting Corp. v. Clark,* 654 F.2d at 431–34. In *Belo,* the Fifth Circuit gave deference to the determination of the district court: "When the concern is the efficient administration of justice and the provision to defendants of fair trials, the consideration of competing values is one heavily reliant on the observations and insights of the presiding judge." 654 F.2d at 431 n. 18. Further, the court

uncovered no basis in the Supreme Court's opinion in *Nixon v. Warner Communications* for warranting the Second, Third, and D.C. Circuits'[3] recognition of a "strong, indeed overwhelming, presumption in favor of access," *id.* at 433, and found those courts to "have created standards more appropriate for protection of constitutional than of common law rights." *Id.* at 434.

In denying the application to copy the tapes, the district court properly considered a number of factors. First, the court noted that the news media had attended the trial and pre-trial hearings, had reported the events of the trial to the public, and had received transcripts of the tapes, which the court had released after the tapes were admitted into evidence. *See Nixon,* 435 U.S. at 599 n. 11, 98 S.Ct. at 1313 n. 11 ("that substantial access already has been accorded the press and the public is simply one factor to be weighed" in the district court's exercise of its discretion); *Rosenthal,* 763 F.2d at 1294 (quoting *Newman v. Graddick,* 696 F.2d 796, 803 (11th Cir.1983)); *Belo,* 654 F.2d at 432. Although CBS argues that the transcripts do not satisfy its right of access in light of the dispute over the tapes' contents, it calls to our attention only one specific instance in which the parties offered contradictory interpretations of the taped conversations. Second, the court expressed concern that defendant Webbe's right to a fair trial under the Sixth Amendment to the Constitution would be affected by release of the tapes. *See Rosenthal,* 763 F.2d at 1295 n. 5 ("the ability of the defendant to get a fair trial if access is granted is the primary ultimate value to be weighed on the non-access side of the balance"). The court noted that not only was the vote fraud case currently under way, but Webbe had two other charges pending against him in the district in which the tapes admitted in the vote fraud trial might also be used. *See Rosenthal,* 763 F.2d at 1295; *Edwards,* 672 F.2d at 1296 (separate charges pending against

---

**3.** The Seventh Circuit's opinions in *United States v. Guzzino,* 766 F.2d 302, 304 (7th Cir.1985) and *United States v. Edwards,* 672 F.2d 1289, 1294 (7th Cir.1982), recognizing a strong presumption in favor of the common law right of access were decided after *Belo.*

 

defendant made second trial "more than merely hypothetical," so that trial judge could properly recognize that adverse publicity from broadcasting incriminating tape posed threat to selecting impartial second jury, independent of whether tape would be introduced at second trial). Further, the court stated that Webbe's status as a public figure had "posed many problems" in selecting a jury, with numerous jurors stricken for cause.[4] Although Webbe has already pleaded and been sentenced in the harboring and cable television cases, his conviction in the vote fraud case has been docketed for appeal to this court. The possibility is thus presented that Webbe could secure a new trial in that case, necessitating the impaneling of a second jury. The district court also properly could have considered whether the administrative difficulties in providing access to the tapes, parts of which had not been admitted into evidence, would have adversely affected the progress of the trial, *Rosenthal,* 763 F.2d at 1294–95; *Edwards,* 672 F.2d at 1296, although the court did not express this concern in its opinion.

■ In sum, we think the decision as to access is properly handled on an ad hoc basis by the district judge, who is in the best position to recognize and weigh the appropriate factors on both sides of the issue. The presiding judge in the criminal trial of a public figure has numerous matters competing for his attention. We are ill-equipped to second-guess his determination as how to best accomodate the interests of the parties involved, including the rights of the press. Because we are satisfied that the district court properly considered the relevant factors, we find no abuse of discretion in the court's determination here that Webbe's constitutional

right to a fair trial outweighs CBS' common law right of access to the tapes.

## III. CONCLUSION

The judgment of the district court in denying the application is affirmed.

---

4. CBS characterizes any potential harm to Webbe's fair trial rights as "hypothetical," and quotes the Third Circuit in *Criden* as stating, "[W]e must distinguish between those situations where there is hypothetical prejudice and those where it can be demonstrated that there has been actual prejudice caused by publicity." 648 F.2d at 827. In *Criden,* however, the court stated that "if the trial court had already experienced difficulty in jury selection, we would be faced with an actual rather than conjectural factor militating against release of the tapes for rebroadcast. However, the trial court's experience was the contrary." *Id. See also United States v. Martin,* 746 F.2d 964, 975–76 (3d Cir. 1984) (Sloviter, J., dissenting). Thus under *Criden* the prejudice to Webbe's right to a fair trial would be actual and not hypothetical.