**UNITED STATES of America,**

v.

**William MASSELLI, Frank Costanzo, Joseph Bugliarelli, Michael Orlando, John Dono, Thomas Carbonaro, Theodore Derosa, Anthony Capponi, Joseph Imbruglia and Pellegrino Masselli Meats, Inc., Defendants.**

**SCHIAVONE CONSTRUCTION COMPANY, Raymond J. Donovan, Ronald A. Schiavone, Richard C. Callaghan, Joseph A. DiCarolis, Morris J. Levin, Albert J. Magrini, Gennaro Liguori and Robert Genuario, Petitioners,**

v.

**Mario MEROLA, Stephen R. Bookin, Jay Shapiro, Edward McCarthy and other unknown John Does, Respondents.**

No. 81 Crim. 0325 (LFM).

United States District Court, S.D. New York.

June 25, 1986.

Connell, Foley & Geiser by Theodore W. Geiser, Roseland, N.J., for petitioner Schiavone Const. Co.

Pierson, Ball & Dowd by William O. Bittman and Robert A. Feitel, Washington, D.C., and Kaye, Scholer, Fierman, Hays & Handler by Paul J. Curran and Barbara Kagan, New York City, for petitioner Raymond J. Donovan.

Ronald A. Schiavone, petitioner pro se.

Brown & Brown by Raymond M. Brown, Jr., Newark, N.J., for petitioner Richard C. Callaghan.

Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor by Theodore V. Wells, Jr., Roseland, N.J., for petitioner Joseph A. DiCarolis.

Robert Hill Schwartz by Robert Hill Schwartz, New York City, for petitioner Morris J. Levin.

Stanley S. Arkin, P.C. by Stanley S. Arkin and Jeffrey M. Kaplan, New York City, for petitioner Albert J. Magrini.

Robert Kasanof by Robert Kasanof, New York City, for petitioner Gennaro Liguori.

Stein, Bliablias, McGuire & Pantages by Dino D. Bliablias, Livingston, N.J., for petitioner Robert Genuario.

Mario Merola, Dist. Atty., Bronx County by Peter D. Coddington, Asst. Dist. Atty., Bronx, N.Y., for respondents.

## OPINION

MacMAHON, Senior District Judge.

Petitioners move by order to show cause, pursuant to Rule 42(b), Fed.R.Crim.P., and Rule 43(a), Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, for an evidentiary hearing to determine whether Bronx District Attorney Mario Merola, his press agent Edward McCarthy, and Bronx Assistant District Attorneys Stephen Bookin and Jay Shapiro should be held in civil and criminal contempt of court for violation of a wiretap order of this court made on December 15, 1983 in a then pending criminal action, *United States v. Masselli*, 81 Cr. 325 (LFM).

After hearing oral argument on April 28, 1986 and considering the affidavits, documents and memoranda submitted by the parties, we deny and dismiss the petition for the reasons that follow.

## FACTS

The material facts, as petitioners concede, are not in dispute.[1] The Federal Bureau of Investigation ("FBI") conducted court-authorized electronic surveillance, from January 1979 to June 1979, of Pelligrino Masselli Meats, Inc., 102 Bruckner Boulevard, Bronx, New York, pursuant to 18 U.S.C. §§ 2510 *et seq.*, and made 892 recorded tapes of conversations known as the "Tumcon" tapes. At the conclusion of the FBI's investigation, the Tumcon tapes were placed under seal by Hon. Lawrence W. Pierce, then a United States District Judge for the Southern District of New York.

---

1. *See* Petitioners' Supplemental Memorandum of Law at 16 ("The record is clear … that … the material facts are not in dispute.")

Three years later, on December 15, 1983, on application of the Bronx District Attorney and the consent of the United States Attorney for the Southern District of New York, we granted an order releasing the Tumcon tapes for use in the investigation in Bronx County of a September 1978 murder of Salvatore Frascone. The order permitted the Bronx District Attorney to copy the Tumcon tapes, logs and indices ("the Title III materials") and to present them to a grand jury subject to the following restrictions:

IT IS HEREBY ORDERED:

\* \* \* \* \* \*

(3) That no other copies of the Title III materials shall be made without the prior express permission of the Court, except that excerpts may be copied for use by the District Attorney of Bronx County and his staff;

\* \* \* \* \* \*

(5) That no other disclosure of the contents of the Title III materials received pursuant to the Order may be made without prior notice to the United States Attorney's Office for the Southern District of New York and without the approval of this Court.

On August 2, 1984, the Bronx District Attorney was granted another wiretap order by Hon. John E. Sprizzo which permitted his use, in any proceeding, of 52 recorded conversations from the Tumcon tapes pertaining to various state law crimes, such as second degree murder and grand larceny. Two months later, on October 2, 1984, the indictment in *People v. Schiavone Construction Co.*, No. 3571/84, Supreme Court, Bronx County, was unsealed, and on October 29, 1984, we granted yet another order permitting the Bronx District Attorney to provide copies of the Title III materials to each of the defendants ("the *Schiavone* defendants").

On December 20, 1985, after an eleven-week evidentiary hearing in *Schiavone*, Hon. John P. Collins denied defendants' motion to suppress the Title III materials. Each of the *Schiavone* defendants then moved in state court, on April 1, 1986, for a severance. In support of that motion, defense counsel Stanley S. Arkin submitted an affidavit containing a footnote citing the prosecution's 366–page transcript of 28 Tumcon conversations entitled, "Excerpts From Conversations Intercepted Pursuant to Court-Ordered Electronic Surveillance of 102 Bruckner Boulevard, Bronx, New York, Between January 5, 1979 and July 8, 1979" ("the Excerpts Transcript").

At a status conference, held on April 3, 1986, Bronx Assistant District Attorney Jay Shapiro told Justice Collins that the Excerpts Transcript had been filed in the Clerk's office that morning as part of the prosecution's response to the severance motion, that he was unaware of any legal ground requiring him to file his complete response at one time, and that he did not at that time know if copies of the Excerpts Transcript had been distributed to reporters. Justice Collins thereupon ordered Mr. Shapiro to retrieve all copies of the Excerpts Transcript and to submit only one to the court under seal.[2] It was soon learned, however, that Mr. Merola's press secretary, Edward McCarthy, had distributed five copies of the Excerpts Transcript to several reporters only two and one-half hours after the April 3 court filing.[3]

The following day, April 4, 1986, newspaper articles discussing the contents of the Excerpts Transcript and the pending *Schiavone* case appeared in the *New York Times*, the *Washington Post* and the *Daily News*. The *Washington Post* characterized the Excerpts Transcript as "a colorful

---

**2.** *See* Exhibit 7 to April 14, 1986 Affidavit of William O. Bittman, counsel to defendant Raymond J. Donovan, at 17–29 (Transcript of April 3, 1986 status conference).

**3.** Mr. McCarthy reportedly justified his dissemination of the Excerpts Transcript to reporters based upon defense counsel's reference to the transcript in the severance motion and the prosecutor's filing of the complete text of the Excerpts Transcript. *See New York Times,* April 4, 1986.

preview of the prosecution's case at the forthcoming trial set for Sept. 2," [4] and the *Daily News* reported that "[a]lthough portions of the conversations have been used previously in court to uphold the indictment, the complete transcript provides a graphic view of the alleged scheme." [5]

### DISCUSSION

The only issue before this court is whether respondents may be held in contempt of our order of December 15, 1983, and we make no findings or conclusions on any other issue, such as alleged prosecutorial misconduct.

Petitioners contend that respondents' court filing and public distribution of the Excerpts Transcript violated paragraphs 3 and 5 of our December 15, 1983 wiretap order, and that respondents wilfully and flagrantly defied our order and, accordingly, should be held in criminal and civil contempt.

Respondents insist that they "have done everything right" and chiefly rely on Judge Sprizzo's order of August 2, 1984 authorizing public disclosure of the Excerpts Transcript "in any proceeding." Respondents also contend that when petitioners cited the

---

**4.** *Washington Post,* April 4, 1986, at A5.

**5.** *Daily News,* April 4, 1986.

**6.** *In re Irving,* 600 F.2d 1027, 1037 (2d Cir.), *cert. denied sub nom. DiLapi v. Irving,* 444 U.S. 866, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979); *see United States v. Wendy,* 575 F.2d 1025, 1029 n. 13 (2d Cir.1978).

**7.** *See Lasky v. Quinlan,* 558 F.2d 1133, 1137 (2d Cir.1977); *American Trucking Ass'ns v. I.C.C.,* 728 F.2d 254, 255 (5th Cir.1984); *United States v. Workwear Corp.,* 602 F.2d 110, 115 (6th Cir. 1979).

**8.** *In re Weiss,* 703 F.2d 653, 660 (2d Cir.1983).

**9.** *Erhardt v. Prudential Group, Inc.,* 629 F.2d 843, 846 (2d Cir.1980).

**10.** *See Louisiana Ed. Ass'n v. Richland Parish School Bd.,* 421 F.Supp. 973, 975 (W.D.La.1976), *aff'd,* 585 F.2d 518 (5th Cir.1978); *In re Williams,* 306 F. Supp. 617, 618–19 (D.D.C.1969). The power of the court to punish a party's contemptuous acts by fine or imprisonment is also codified at 18 U.S.C. § 401.

---

Excerpts Transcript in their severance motion papers, the transcript became a matter of public record and, therefore, the court filing of the Excerpts Transcript and its distribution to the press were entirely proper. Finally, respondents contend that under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, a contempt citation from this court would constitute unlawful federal interference in the state prosecution of the *Schiavone* defendants.

*The Contempt Standard*

"The purpose of an order of criminal contempt ... is punitive. It is imposed to vindicate the court's authority." [6] A civil contempt citation, on the other hand, is remedial; it is designed to coerce compliance with court orders and compensate a litigant for losses caused by the contemnor's disobedience.[7] Criminal contempt requires proof beyond a reasonable doubt that the alleged contemnor acted wilfully.[8] Civil contempt, in contrast, only requires proof by clear and convincing evidence that the order was disobeyed.[9]

Although courts have inherent power to coerce obedience to their orders and to punish contemnors for wilful violations,[10]

A criminal contempt proceeding, brought to punish acts committed outside the court's presence, may be commenced by an order to show cause setting forth the time and place of hearing and the essential facts alleged to constitute the criminal contempt. Rule 42(b), Fed.R.Crim.P. The same is applicable to a charge of civil contempt. Rule 43(a), Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York.

To prosecute the contempt, the court may appoint either an assistant from the staff of the United States Attorney or counsel for the party alleging the criminal contempt. *United States ex rel. Vuitton Et Fils S.A. v. Klayminc,* 780 F.2d 179, 183 (2d Cir.1985) ("The practice of appointing such counsel as prosecutor has a long history in this circuit. The attorney will usually be the court's only source of information about contempts occurring outside the court's presence"); *Musidor, B.V. v. Great American Screen,* 658 F.2d 60, 64 (2d Cir.1981); *McCann v. New York Stock Exchange,* 80 F.2d 211, 214 (2d Cir. 1935) (Hand, J.), *cert. denied,* 299 U.S. 603, 57 S.Ct. 233, 81 L.Ed. 444 (1936). Criminal contempt proceedings need not, therefore, be initiated by indictment or information by the United

210

"[c]ourts must be careful in employing [contempt sanctions] because the 'judicial contempt power is a potent weapon.'"[11] Moreover, an order of contempt will not be granted unless the allegedly violated judicial order is specific, definite, and unequivocal.[12]

Based upon the affidavits, briefs, exhibits, oral arguments, and petitioners' own admission,[13] we conclude that there are no genuine issues of material fact to be resolved and, accordingly, deny their request for an evidentiary hearing.[14] We hold, for the reasons stated below, that respondents are not in contempt of our wiretap order of December 15, 1983 and dismiss the instant petition.

*The Court Orders Granted*

Respondents do not dispute that paragraphs 3 and 5 of our December 15, 1983 order clearly and unequivocally prohibited them from (1) copying the Title III materials, and (2) disclosing their contents without notice to the United States Attorney and approval of this court. At oral argument, however, respondents insisted that they adhered to our order when the Bronx District Attorney applied to Judge Sprizzo, on notice to the United States Attorney, for an order permitting his use of 52 Tumcon conversations in any Bronx criminal proceeding.[15]

Our order of December 15, 1983 cannot be read in a vacuum; subsequent orders of this court pertaining to the disclosure of wiretap evidence obviously will bear upon whether respondents may be held in contempt. Indeed, Judge Sprizzo's order of August 2, 1984 clearly *amended* our prior order by permitting the Bronx prosecutors to disclose the Tumcon conversations in any proceeding relating to the prosecution of various state law crimes.

We note that a factual dispute exists between petitioners and respondents over the extent of the public disclosures at the suppression hearing of the contents of the 366-page Excerpts Transcript. Petitioners assert that any prior public disclosure of the Excerpts Transcript was "infinitesimal." Petitioners' Supplemental Brief at 12; May 6, 1986 Affidavit of Theodore W. Geiser, counsel to Schiavone Construction Company, at ¶¶ 4–8.

Respondents contend that the contents of at least 22 of the 28 conversations disclosed to the press were previously filed by the Bronx District Attorney with the Clerk of the Supreme Court, Bronx County, in connection with the suppression hearing and, thus, were already in the public domain at the time the Excerpts Transcript was released to the press. May 1, 1986 Affidavit of Peter D. Coddington, counsel for respondents, at ¶ 13.

The issue before this court is whether respondents have violated the undersigned's order of December 15, 1983, regardless of any prior disclosures of the intercepted conversations at issue. Thus, although there may be a factual dispute concerning the extent of the prior disclosures of the contents of the Excerpts Transcript, it is not a *material* dispute requiring resolution at an evidentiary hearing.

States Attorney. *See United States ex rel. Vuitton Et Fils S.A. v. Karen Bags,* 592 F.Supp. 734, 748 (S.D.N.Y.1984), *aff'd,* 780 F.2d 179 (2d Cir. 1985). Appointment of Paul J. Curran, co-counsel to Raymond J. Donovan, to prosecute the alleged contempt was therefore entirely appropriate. *See United States ex rel. Vuitton Et Fils S.A. v. Klayminc, supra,* 780 F.2d at 183.

**11.** *UFI Razor Blades, Inc. v. District 65, Wholesale, Retail, Office & Processing U.,* 610 F.2d 1018, 1024 (2d Cir.1979); *see In re Attorney General of the United States,* 596 F.2d 58, 65 (2d Cir.), *cert. denied sub nom. Socialist Workers Party v. Attorney General of the United States,* 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979) ("A court must not lightly invoke its contempt power").

**12.** *See United States v. Charmer Industries, Inc.,* 722 F.2d 1073, 1079 (2d Cir.1983); *UFI Razor Blades, Inc., supra,* 610 F.2d at 1024; *Richmond Black Police Officers v. Richmond, Va.,* 548 F.2d 123, 129 (4th Cir.1977) (order allegedly violated must be "definite, clear, specific, and [leave] no doubt or uncertainty in the minds of those to whom it [is] addressed").

**13.** *See supra* note 1.

**14.** *See Washington Metropolitan Area Transit Authority v. Amalgamated Transit Union,* 531 F.2d 617, 620 (D.C.Cir.1976); *In re United Corporation,* 166 F.Supp. 343, 345 (D.Del.1958) (showing of probable cause required before criminal contempt may be prosecuted).

**15.** In view of the undersigned's unavailability at the time of respondents' application, respondents applied to Judge Sprizzo, then sitting as the emergency judge in Part I. *See* Rule 3 of the Rules for the Division of Business Among District Judges of the Southern District of New York.

We conclude, therefore, that our order of December 15, 1983 and Judge Sprizzo's order of August 2, 1984 *must be read together.* Whether respondents are in contempt is, therefore, solely an issue of law: Did our order of December 15, 1983, *as amended* by Judge Sprizzo's order, clearly and unequivocally prohibit respondents from publicly disclosing the Excerpts Transcript?

*Judge Sprizzo's Order*

Judge Sprizzo's order states, in pertinent part:

ORDERED, pursuant to Title 18, United States Code, Sections 2517(3), (5), that the intercepted conversations enumerated in the annexed and incorporated application of Mario Merola, District Attorney of Bronx County, and the affidavit of Stephen R. Bookin, Assistant District Attorney, and the evidence derived therefrom, *are permitted to be disclosed and used in any proceeding relating to the prosecution of the aforementioned offenses.* (Emphasis added.)

On its face, Judge Sprizzo's order states that it is granted "pursuant to Title 18, United States Code, Sections 2517(3), (5)." Indeed, the decretal paragraph merely tracks the statutory language of Subsection 3 of 18 U.S.C. § 2517, which authorizes disclosure and use of intercepted wire or oral communications in any criminal proceeding. Petitioners *themselves* concede this point in their reply brief: "By its express terms, Judge Sprizzo's Order goes no further than Section 2517(3) . . . ." (Petitioners' Reply Brief at 8.)

Section 2517(3) of Title 18, United States Code, provides:

Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence *while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.* (Emphasis added.)

We conclude that Judge Sprizzo's order granted precisely the same relief authorized by Section 2517(3), and that both order and statute *mean the same thing.* However, therein lies the crux of this case, for the question of *when* Title III materials may publicly be disclosed under Section 2517(3) (and hence under Judge Sprizzo's order) is simply not clear, as evidenced by the split of authority among federal courts that have considered the issue.

Because the language of Judge Sprizzo's order was taken almost verbatim from a wiretap statute that does not clearly state when public disclosure of Title III materials is appropriate, *a fortiori,* our order, as amended, is too indefinite to sustain a citation for contempt.

*Relevant Caselaw under Section 2517(3)*

In *United States v. Cianfrani,* 573 F.2d 835 (3d Cir.1978), the Third Circuit noted that "[p]ublic disclosure with limited exceptions, is authorized only in accordance with § 2517(3). . . . The legislative history explains that what may be disclosed within § 2517(3) are those communications that were not 'unlawfully intercepted' within the meaning of § 2518(10)(a)." [16] The court held that public disclosure of Title III materials is prohibited only *"prior* to the determination by the court that such communication was intercepted lawfully, *i.e.,"* in conformity with Title III.[17]

Here, an eleven-week evidentiary hearing was held to determine whether the Title III materials should be suppressed because, *inter alia,* the FBI allegedly omitted material information from its various wiretap applications in violation of Title III and the Fourth Amendment. Justice Collins denied the motion to suppress, holding that the FBI did not violate any of the provisions of

---

**16.** *United States v. Cianfrani,* 573 F.2d 835, 855 (3d Cir.1978) (citations omitted).

**17.** *Id.* at 857 (emphasis added).

Title III or the Fourth Amendment in obtaining the Tumcon wiretap orders.[18]

Thus, under *Cianfrani, supra,* respondents here, under § 2517(3), could have publicly disclosed the Excerpts Transcript after Justice Collins held the Title III materials were lawfully intercepted. We reiterate that the language and purpose of § 2517(3) and Judge Sprizzo's order of August 2, 1984 are virtually identical. *Cianfrani, supra,* therefore, is *authority* for respondents' public disclosure of the Excerpts Transcript.

Different results were reached by the Seventh and Eleventh Circuits. In *United States v. Dorfman,* 690 F.2d 1230 (7th Cir. 1982), the district court, in a pending suppression hearing, ordered the sealing of various government exhibits containing wiretap evidence and ultimately held that most of the evidence had been lawfully obtained.[19] Newspaper publishers and broadcasters then moved to unseal the exhibits for examination because defendants—senior officers of labor unions and alleged organized crime figures—were considered newsworthy. The motion was granted and the exhibits unsealed.[20] On appeal, the Seventh Circuit reversed, reasoning that once the exhibits were sealed,

"[the district court] was not authorized by any provision ... in Title III to release them to the public. The only lawful way they can be made public over the defendant's objection is *by being admitted into evidence in the criminal trial or some other public proceeding within the scope of section 2517(3)."*[21]

Compounding the confusion regarding public disclosure under § 2517(3) is the *Dorfman* court's statement that its holding is limited to public disclosures *after* Title III materials have been sealed. In *dicta,* the *Dorfman* court appeared to favor the result in *Cianfrani* when Title III materials *have not been placed under seal* at a suppression hearing:

We need not decide whether [the district judge] was *required* to seal the exhibits, either by Title III or by the due process clause of the Fifth Amendment ... though we note that the strict prohibition in Title III against disclosure of unlawfully obtained wiretap evidence would be undermined by public disclosure of wiretap evidence at a suppression hearing *before the judge ruled on the lawfulness of the wiretaps. See United States v. Cianfrani,* 573 F.2d 835, 837 (3d Cir. 1978). (Emphasis added.)

---

**18.** *See People v. Schiavone Construction Co.,* Index Nos. 3571/84 and 3570/84, Memorandum at 32–39 (Sup.Ct., Bronx Co., Dec. 20, 1985) (Collins, J.).

The Supreme Court, Bronx County, had authority under 18 U.S.C. § 2518(10)(a) to hold that the Tumcon surveillance met the requirements of Title III. Section 2518(10)(a) provides that a defendant in any trial or proceeding before the United States *or any state or political subdivision* may move to suppress wiretap materials before the trial or proceeding: .

Any aggrieved person *in any trial, hearing, or proceeding* in or before *any court, department, officer, agency, regulatory body or other authority of the United States, a State, or a political subdivision thereof,* may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before *the trial, hearing, or proceeding....* If the motion is granted, the contents of the intercepted wire or oral communication ... shall be treated as having been obtained in violation of this chapter. *The judge* ... may ... make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication ... as *the judge* determines to be in the interests of justice. (Emphasis supplied.)

The statute makes clear that state court judges are not preempted from ruling on the lawfulness of intercepted wire and oral communications; on the contrary, such rulings are expressly authorized.

**19.** *United States v. Dorfman,* 690 F.2d 1230, 1231 (7th Cir.1982).

**20.** *Id.*

**21.** *Id.* at 1233.

The clearest analysis of public disclosure under § 2517(3) is set forth in *United States v. Rosenthal,* 763 F.2d 1291 (11th Cir.1985), which reversed the district court's denial of a news agency's request for access to Title III materials that had been admitted into evidence at trial and played in open court.[22] The Eleventh Circuit held: "Title III creates no independent bar to the public's right of access to judicial materials with respect to wiretap materials [1] legally intercepted and [2] admitted into evidence pursuant to [Section 2517(3)]."[23]

Under *Dorfman, supra,* it is *unclear* whether respondents' public disclosure of the Excerpts Transcript was improper, given the Bronx court's failure to place any of the wiretap evidence under seal at the suppression hearing. We note, however, that the *dicta* in *Dorfman, supra,* which relies on *Cianfrani, supra,* appears to support, not proscribe, respondents' action. Only under *Rosenthal, supra,* would respondents' public disclosure of the Excerpts Transcript prior to its admission into evidence at trial be clearly and unequivocally prohibited.

These decisions reveal the present confusion over public disclosure of Title III materials in a pending criminal proceeding. The cases are material to our analysis because each construed § 2517(3)—a statute in language and meaning virtually identical to Judge Sprizzo's wiretap order.

As the Second Circuit stated in *United States v. Charmer Industries, Inc.,* 722 F.2d 1073, 1079 (2d Cir.1983), a case factually similar to the one at bar, "[i]t is well settled that a court may not hold a person in contempt unless he has violated a definite and specific order of the court." A long line of cases from this circuit and others leaves no doubt that the potent power of judicial contempt should not be exercised if the order allegedly disobeyed is unclear, indefinite, or equivocal.[24]

Our order of December 15, 1983, as amended by Judge Sprizzo's order of August 2, 1984, did not clearly and unequivocally prohibit the Bronx District Attorney from making the Excerpts Transcript public before its admission into evidence upon trial. Nor did it in any way prohibit respondents from publicly disclosing the Excerpts Transcript once Justice Collins held that the conversations were lawfully intercepted under the wiretap statute. As shown, the language of Judge Sprizzo's order was patterned on statutory language given materially different interpretations by several federal circuit courts. A wiretap order open to such a variety of interpretations concerning the public disclosure of Title III materials simply cannot serve as the predicate of an order of contempt.[25]

## CONCLUSION

Accordingly, petitioners' motion for an evidentiary hearing is denied, and the petition for an order of civil and criminal contempt is in all respects dismissed. SO ORDERED.

---

**22.** *United States v. Rosenthal,* 763 F.2d 1291, 1292 (11th Cir.1985).

**23.** *Id.* at 1294.

**24.** *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 75–76, 88 S.Ct. 201, 207–208, 19 L.Ed.2d 236 (1967); *EEOC v. Local 638 ... Local 28 of Sheet Metal Workers,* 753 F.2d 1172, 1178 (2d Cir.1985); *Powell v. Ward,* 643 F.2d 924, 931 (2d Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981); *UFI Razor Blades, Inc. v. District 65, Wholesale, Retail, Office & Processing U., supra,* 610 F.2d at 1024; *accord North Shore Laboratories Corp. v. Cohen,* 721 F.2d 514, 521 (5th Cir. 1983); *Chapman v. Pacific Tel. & Tel. Co.,* 613 F.2d 193, 195 (9th Cir.1979); *In re Gale F. Weeks,* 570 F.2d 244, 245 n. 1 (8th Cir.1978); *United States v. Greyhound Corp.,* 508 F.2d 529, 532 (7th Cir.1974); *In re Brown,* 454 F.2d 999, 1008 n. 49 (D.C.Cir.1971).

**25.** *United States v. Charmer Industries, Inc., supra,* 722 F.2d at 1079; *see also* note 23 *supra.*

In view of our holding, we need not consider respondents' argument that the Excerpts Transcript was placed in the public domain by petitioners' filing of the severance motion, or any of respondents' arguments under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny.