### UNITED STATES of America

v.

### Harvey SHENBERG, et al.

### No. 91–708–CR.

United States District Court,
S.D. Florida.

March 17, 1993.

John J. O'Sullivan, and Michael Sullivan, Asst. U.S. Attys., Lawrence D. LaVecchio, Special Asst. U.S. Atty., Miami, FL, for plaintiffs.

Stephen Bronis, Miami, FL, for defendant Shenberg.

James J. Hogan, Miami, FL, for defendant Goodhart.

Deborah Rose, Miami, FL, for defendant Davis.

Edward Carhart, Miami, FL, for defendant Sepe.

Vincent Flynn, Miami, FL, for defendant Castro.

Susan Aprill, Miami, FL, for WPLG, Channel 10; WCIX, Channel 6; WTVJ, Channel 4.

Karen Williams Kammer, Miami, FL, for National Broadcasting Co. (NBC).

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon the renewed motion of Post Newsweek Stations, Florida, Inc., d/b/a WPLG Channel 10; CBS, Inc., d/b/a WCIX Channel 6; and WTVJ Channel 4 ("The Press") for access to certain specific audio and video tapes which have been admitted into evidence during trial of this case. The Court has previously denied access to these tapes (Orders of December 19, 1991 and October 16, 1992). A hearing and oral argument on the Press's pending motion was had on Monday, March 15, 1993.

The Press argue, *inter alia*, that they have both a constitutional and common law right of access to the tapes in evidence.

As for the constitutional claim, the Court previously rejected this argument in its order of October 16, 1992, relying on *United States of America v. Webbe*, 791 F.2d 103 (8th Cir. 1986). The Court in *Webbe* noted that the proposition was specifically rejected in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (stating that in *Nixon*, "the Court held that neither the First Amendment guarantee of freedom of the press nor the Sixth Amendment guarantee of a public trial supported the respondents' claim to access to audiotapes, when the press enjoyed unrestricted access to all of the information in the public domain, including the tape transcripts. *Webbe*, 791 F.2d at 105, *citing Nixon*, 435 U.S. at 608–09, 98 S.Ct. at 1317–18.)

▪ In plain English, there is no—repeat NO—constitutional right of access to the tapes by the Press. Though some refuse to believe it, the Constitution of the United States does contain more than the First Amendment.

▪ As noted in the Court's prior order, the stronger argument for access to the

tapes is the common law right of access to judicial records. This right has been recognized both by the U.S. Supreme Court and the 11th Circuit Court of Appeals. *Nixon*, 435 U.S. at 597, 98 S.Ct. at 1311–12; *United States v. Rosenthal*, 763 F.2d 1291 (11th Cir. 1985). This common law right of access is not absolute, however, and must be balanced against other competing interests. *Rosenthal*, 763 F.2d at 1294. Such a decision is normally left to the sound discretion of the trial court. *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423 (5th Cir.1981). Specifically, "when the concern is the efficient administration of justice and the provision to defendants of fair trials, the consideration of competing values is one heavily reliant on the observations and insights of the presiding judge." *Belo Broadcasting*, 654 F.2d at 431, n. 18.

■ Counsel for the defendants (both those on trial and one defendant awaiting trial) argue that the Press should be denied access to the tapes fearing prejudice to their clients' constitutional right to a fair trial. The Court believes the concerns it previously expressed have diminished in light of the expected conclusion of the trial of the first portion of this case. Moreover, the Press now seek access to only a limited number of the tapes admitted in evidence and not all of them.

· The Court has considered, *inter alia,* the following factors in deciding the instant motion: the technical considerations and the difficulty of copying the tapes, the number of tapes requested, the constitutional rights of all defendants, the common law right of access to judicial records, the ongoing jury deliberations in the case, the fact that the jury is not sequestered, and the further fact that the tapes are in evidence and have been played in open court.

The Court also believes that the defendants awaiting trial are not the subject of nor are they otherwise mentioned in any of the requested tapes. If any severed defendant is mentioned on the requested tapes, however,

his or her name must be redacted to preserve that defendant's rights.

■ The Court's final concern is that a non-sequestered jury is presently in deliberations. Immediate release of the tapes could taint the deliberative process if, notwithstanding the Court's instructions, a juror or jurors accidentally viewed or heard these tapes on television. As pointed out by defense counsel, this might result in a juror considering the evidence alone and not with all other jurors present as the law requires. Further, the Court has no control over possible editing of the tapes which might tend to distort the evidence. Finally, the immediate release of the tapes (which would doubtless result in immediate broadcast) might also improperly affect the jury by emphasizing only a small portion of all the evidence.

The Court is especially sensitive to the rights of all defendants to a fair trial as guaranteed by the Sixth Amendment. The Court must balance the Press' common law right of access with the defendants' constitutional right to a fair trial. Assuming that a verdict will be reached in this case, the balance now weighs in favor of public and press access to the tapes. The Court believes that the release of the tapes pursuant to this order will not affect the rights of any defendant.

Accordingly, while the motion will be granted, the release of the tapes will be delayed until such time as the jury has concluded its deliberations and a verdict has been reached in this case.

The Court has reviewed the motion, the record, and being otherwise duly advised, it is hereby:

**ORDERED AND ADJUDGED** that the Press's motion to intervene is **GRANTED.** The request for hearing is **GRANTED.** The motion for access to and copying of audio and video tapes is **GRANTED WITH THE FOLLOWING RESTRICTIONS:**

1) The tapes may be copied at Room 236 of the United States Courthouse, Miami, Florida, on Friday, March 19, 1993 at 10:00 a.m.

2) The Clerk of the Court will retrieve the tapes from the custody of the jury and deliver the tapes in evidence to the U.S. Marshal who will in turn deliver them to the Press at the time and place above for copying.

3) All cost and expense of copying shall be borne by the Press who bears sole responsibility for securing the equipment necessary to effect the copying.

4) The Press shall give notice to *all parties* (including the severed defendants) forthwith of the time and place of copying. All parties and their counsel may be present at the copying to ensure that the procedure is properly done.

5) The names or any mention of any severed defendant is ordered redacted by the technician doing the copying from all copies of the tapes.

6) The U.S. Marshal or Court Security Officer is directed to be present at the copying and is ordered to re-take possession of both the original tapes and of all of the copies at the conclusion of the copying. The original tapes will be returned by the U.S. Marshal or Court Security Officer to the Clerk of the Court who will then return them to the jury room and the custody of the jury. All copies of the tapes will be delivered to the undersigned Judge of this Court on Monday, March 22, 1993 at 9:00 a.m. in chambers.

7) The Court will release all copies of the tapes to the Press and the public after the jury has concluded its deliberations and a verdict has been returned in this case.

**DONE AND ORDERED.**