**UNITED STATES of America, Plaintiff,**

v.

**Bruce CUTLER, Defendant.**

**No. 91–CR–1189 (TCP).**

United States District Court, E.D. New York.

Jan. 7, 1994.

---

Zachary W. Carter, U.S. Atty. by John J. Gallagher, Sp. Pros., Brooklyn, NY, for U.S.

Goldman & Hafetz by Frederick P. Hafetz, Susan Necheles, New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

By Order to Show Cause dated April 27, 1992, with a statement of charges and exhibits annexed, defendant was charged with criminal contempt of this Court in violation of 18 U.S.C. § 401(3) for having knowingly and wilfully violated and disregarded this Court's orders (Glasser, J.) of December 21, 1990, January 9, 1991 and July 22, 1991 directing counsel to comply with Local Criminal Rule 7 of the Eastern District of New York.

Disciplinary proceedings, particularly contempt proceedings involving attorneys, are one of the more unpleasant tasks confronting Judges with plenary powers. This case is no exception. On the one hand, the Judge presiding on the case must take every measure at his or her command to protect the authority of the Court and the integrity of the entire judicial process and it must also make sure that conduct and statements by attorneys and their clients conform with their orders, directions and instructions and not degrade the profession or disserve justice. On the other hand, the Court must be mindful of an attorney's duty to prosecute or defend vigorously a client's case, rights, position and status to the full extent of his or her ability within the parameters of reasonable behavior. In this case, the tension between these opposing considerations is heightened by the notoriety of the defendant and his client and the publicity surrounding the case in which the acts complained of occurred. In reaching its decision herein and on the prior motion to dismiss, this Court has been ever conscious and mindful of these factors and to the best of its ability has given them every possible weight and consideration.

## BACKGROUND

Defendant in this action, Bruce Cutler, Esq., represented John Gotti in the criminal matter of *United States v. John Gotti*, 90–CR–1051 (ILG). From the date of the indictment on, there was voluminous press on that case, and in the various pre-trial conferences on the dates above, Judge Glasser of this Court expressed his concern that the case be tried in the courtroom and not in the press and directed the parties to refrain from commenting to the press in a way which was violative of Local Criminal Rule 7 of the Eastern District of New York.[1] Despite this,

---

**1.** Local Criminal Rule 7: "Free Press–Fair Trial Directives," states in pertinent part:

(a) It is the duty of the lawyer or law firm not to release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which a lawyer or a law firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice, [sic] With respect to a grand jury or other pending investigation of any criminal matter, a lawyer participating in or associated with the investigation shall refrain from making any extrajudicial statement which a reasonable person would expect to be disseminated by means of public communication that goes beyond the public record or that is not necessary to inform the public that the investigation is underway, to describe the general scope of the investigation, to obtain assistance in the apprehension of a suspect, to warn the public of any dangers or otherwise to aid in the investigation.

From time of arrest, issuance of an arrest warrant or the filing of a complaint, information or indictment, in any criminal matter until the commencement of trial or disposition without trial, a lawyer or law firm associated with the prosecution or defense shall not release or authorize the release of any extrajudicial statement which a reasonable person would expect to be disseminated by means of public commu-

John Gotti's attorney, Bruce Cutler, was quoted extensively in the local media both before and after Judge Glasser's warnings and orders. Finally, on November 4, 1991, Judge Glasser appointed a special prosecutor and on April 27, 1992, signed an Order to Show Cause as to why Bruce Cutler should not be held in criminal contempt in violation of 18 U.S.C. § 401(3). This case was then assigned by random selection to the undersigned.

Prior to the trial in this case, defendant moved to dismiss the criminal contempt charges in their entirety or, in the alternative, to dismiss specified charges contained in subparagraphs 5(b), (c), (d), (f), (i), (j), (k), (*l*), (n) and 7(d) of the Order to Show Cause on the basis that they do not, on their face, concern the "character and reputation of Gotti, his guilt or innocence and the merits of and evidence in *United States of America v. Gotti* " as proscribed by Local Rule 7 and to dismiss the charges of subparagraphs 5(e), (g), (h), (j), 7(a), (b), (c), (d), (f) and (g) contending that they constitute permissible statements responsive to charges of misconduct by the attorney.[2]

nication, relating to that matter and concerning:
(1) The prior criminal record (including arrests, indictments or other charges of crime), or the character or reputation of the accused, except that the lawyer or law firm may make a factual statement of the accused's name, age, residence, occupation and family status; and if the accused has not been apprehended, a lawyer associated with the prosecution may release any information necessary to aid in the accused's apprehension or to warn the public of any dangers the accused may present;
(2) The existence or contents of any confession, admission or statement given by the accused, or the refusal or failure of the accused to make any statement;
(3) The performance of any examinations or tests or the accused's refusal or failure to submit to an examination or test;
(4) The identity, testimony or credibility of prospective witnesses, except that the lawyer or law firm may announce the identity of the victim if the announcement is not otherwise prohibited by law, [sic]
(5) The possibility of a plea of guilty to the offense charged or a lesser offense;
(6) Any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case.

In our Memorandum and Order denying the defendant's motion to dismiss the charges in their entirety, dated March 8, 1993, *United States of America v. Bruce Cutler*, 815 F.Supp. 599 (E.D.N.Y.1993) (familiarity with which is presumed), we set forth the basic undisputed facts in this proceeding and we held that:

*First:* Judge Glasser's July 22, 1991 directive (concededly) amounted to an order for criminal contempt purposes and a decision with respect to his December 21, 1990 and January 9, 1991 directives should await the conclusion of the trial. *Cutler*, 815 F.Supp. at 608–609.

*Second:* Defendant is collaterally barred from attacking the constitutional validity of Local Rule 7, except on the grounds of transparent invalidity or that Judge Glasser lacked subject matter jurisdiction. *Id.* at 610–611.

*Third:* Local Rule 7 is not transparently invalid on the ground of its alleged (i) inherent vagueness, (ii) restriction on attorney speech or (iii) viewpoint discriminatory provisions. *Id.* at 611–616.

> The foregoing shall not be construed to preclude the lawyer or law firm during this period, in the proper discharge of his, her, or its official or professional obligations, from announcing the fact and circumstances of arrest (including time and place of arrest, resistance, pursuit and use of weapons), the identity of the investigating and arresting officer or agency and the length of investigation; from making an announcement, at the time of seizure of any physical evidence other than a confession, admission or statement, which is limited to a description of the evidence seized; from disclosing the nature, substance or text of the charge, including a brief description of the offense charged; from quoting or referring without comment to public records of the court in the case, from announcing the scheduling or result of any stage in the judicial process; from requesting assistance in obtaining evidence; or from announcing without further comment that the accused denies the charges.
> E.D.N.Y.Crim.R. 7(a).

2. The motion to dismiss regarding specific paragraphs was denied as it concerned important factual issues that could only be adequately assessed after considering all the evidence presented at trial.

*Fourth:* Local Rule 7 absolutely prohibits "*any* extrajudicial statement which a reasonable person would expect to be disseminated by means of public communication" (emphasis added) and which falls within any one of the proscribed six subsections in Rule 7(a)(1)–(6). There is no qualification that these statements must represent a "reasonable likelihood" of interfering with a fair trial to be proscribed.[3] *Id.* at 612.

Nothing at or subsequent to the trial has persuaded the Court that the above-stated decisions were in any respect incorrectly made. Nonetheless, the Government urges the Court also to consider and decide whether the cited statements and conduct violate not only one or more of the six specific prohibitions but also, *arguendo,* the "reasonable likelihood" test contained in the first general paragraph.

## DISCUSSION

This case was tried before the Court without a jury[4] over a period of five days on June 21, 22 and 23, October 12 and December 9, 1993.

■ In order to sustain a conviction for criminal contempt, the Government must establish each of the following elements beyond a reasonable doubt: (1) that the Court gave the defendant certain orders; (2) that the defendant disobeyed or disregarded those orders; and (3) that the defendant acted wilfully and knowingly in disobeying the Court's orders. *United States v. Turner,* 812 F.2d 1552, 1563 (11th Cir.1987); *United States v. Burstyn,* 878 F.2d 1322, 1324 (11th Cir.1989).

### 1. The Court Gave Defendant Definite Orders on January 9 and July 22, 1991

As we stated at length in our earlier opinion, to constitute a finding of contempt, the order in question must be unambiguous, definite and specific. *See Cutler,* at 607–608. *See also United States v. Charmer Industries, Inc.,* 722 F.2d 1073, 1079 (2d Cir.1983); *UFI Razor Blades, Inc. v. District 65, Wholesale, Retail, Office and Processing Union,* 610 F.2d 1018, 1024 (2d Cir.1979); *United States v. Masselli,* 638 F.Supp. 206, 213 (S.D.N.Y.1986); *International Longshoremen's Association v. Philadelphia Marine Trade Association,* 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967).

■ It is crystal clear that Judge Glasser believed his statements to counsel with respect to Rule 7 on both December 21, 1990 and January 9, 1991 were "orders" and that they indeed represent sufficiently definite and specific orders. He specifically used that word on January 9, 1991 in communicating his pointed directive.

I called counsel into chambers at the end of the first day in which we all met. I made it very clear that I feel strongly about not trying this case in the newspapers for the reason that I think the Sixth Amendment right is a significant one. I made it very clear that there is a rule, Local Rule 7, which carefully proscribes out-of-court comments by defense and prosecutors.

. . . .

I've made my position clear and I'll exercise all the power which is at my disposal to do whatever I can to enforce the *orders*

---

**3.** As noted in our previous opinion, the first paragraph of Local Criminal Rule 7 contains a general proscription of publicly disseminated extrajudicial statements "if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." On the other hand, the second paragraph contains specific prohibitions of six types of statements without any additional clause regarding the "reasonable likelihood" of interfering with a fair trial. By any rule of statutory construction no such requirement of "reasonable likelihood" as to statements within those six subsections was ever intended. *See Cutler,* at 612. *See also Report of the Committee on the Operation of the Jury System on the "Free Press–Fair Trial" Issue,* 45 F.R.D. 391, 407

(1968) (the specific restrictions that follow the "reasonable likelihood" standard "contemplate an absolute prohibition of extrajudicial disclosure by attorneys of prior criminal records, confessions, tests, witnesses, opinions as to the guilt or innocence of the accused, the merits of the case or the evidence involved, as well as other described matters potentially prejudicial in nature.")

**4.** The Order to Show Cause states that the maximum penalty to be imposed on defendant is imprisonment for a term of six months or a $5,000.00 fine. Accordingly, defendant is not entitled to a jury trial and this Court is the ultimate finder of facts.

of this Court and to hold those persons who I may discover to be responsible for violating those *orders* accountable. I don't see any need to belabor that. (emphasis added.)

Government Exhibit 13A at 44–45, 50: *Gotti* transcript of January 9, 1991.

Accordingly, this Court has no difficulty in holding that Judge Glasser's excerpted and quoted statements on January 9th constituted a clear, unambiguous, definite and specific order for criminal contempt purposes, particularly in light of what had occurred on December 21st. On that date, he said,

I feel very strongly about the conduct of this trial in an orderly and fair way and I feel very strongly about Rule 7 of the local rules of this Court with respect to fair trial and free press.

That rule spells out, I believe, in some detail, what it is that it is appropriate for defense lawyers to be commenting about. You, Mr. Cutler.

. . . .

My admonition simply is, observe Rule 7 and observe the ABA standards for criminal justice, which in Chapter Eight sets out the appropriate considerations with respect to fair trial and free press.

Govt. Exh. 10C at 44, 45: *Gotti* transcript of December 21, 1990.

■ However, on this date, Judge Glasser used the word "admonition" which means "warning" and this arguably could be said to have been unclear, at least, to a lay person. This Court is mindful of the authorities which hold that it must consider the "audience" to whom the "admonition" or order was made. *United States v. Turner,* 812 F.2d 1552, 1565 (11th Cir.1987); *see also United States v. Revie,* 834 F.2d 1198, 1201 (5th Cir.1987), *cert. denied,* 487 U.S. 1205, 108 S.Ct. 2845, 101 L.Ed.2d 882 (1988). There is little doubt that Mr. Cutler, an admitted member and frequent practitioner in the Eastern District of New York understood this to be an order to obey Rule 7, especially since it was directed at him by name. Moreover, there is no doubt in the Court's mind that had any such statement been made to the undersigned when he was a trial practitioner, he would have understood and taken it to be an order of the Court which must be obeyed. Nonetheless, it is not inconceivable that a literal legal mind might interpret Judge Glasser's statements on December 21st to have been something less than an order and, hence, we hold that the defendant may not be held in contempt thereon.

It has been conceded by the defense and already held by this Court that Judge Glasser's statements of July 22, 1991 constitute a clear and unambiguous order.[5] *See Cutler,* at 609.

2. *Defendant disobeyed or disregarded those orders.*

As to the second element, we find and hold that each of the statements made by Bruce Cutler after January 9, 1991 listed in the Order to Show Cause violates both Judge Glasser's order of January 9th to "stop" making out of court comments carefully proscribed by Rule 7 and of July 22nd that "I want it stopped now. The response ought to

5. On that date, Judge Glasser directed the attorneys,

I want to tell you that I will issue an order to you to show cause why I shouldn't hold you in contempt. I am not going to do it now, but unless the kind of statement[s] which I regard as violative of Rule 7 don't cease I am going to issue such an order.

. . . .

I don't know how direct I can be.

. . . .

I don't know how I can be more clear than that. That's it. I want it stopped now. The response ought to be, no comment. The Judge has said that I can't talk about this case, period.

. . . .

[B]ut you know what Rule 7 says. It is, in essence, a kind of gag order. The thing you ought to say is, there is a case pending, the rules of this Court say I can't comment on it. No comment. Come into the courtroom publish whatever it is you will hear me talk about in court. It's a public record. And that's the end of it. Okay, that's it.

As far as Gotti or anybody else is concerned you don't need anymore publicity about Gotti. Okay. That's the end of it.

. . . .

Do it. That's all do it. It's simple.

MR. CUTLER: Yes, sir.

Govt. Exh. 34 at 2, 3, 10, 10–11 & 12: *Gotti* transcript of July 22, 1991.

be, no comment. The Judge has said that I can't talk about this case, period." "Do it. That's all do it. It's simple." Govt. Exh. 13A at 45; Govt. Exh. 34 at 10, 12.

■ Defendant argues that prior to determining whether Judge Glasser's orders were disobeyed or disregarded, it is necessary to determine whether the statements made by defendant violate Rule 7 on the assumption that the reasonable likelihood test in the first paragraph is applicable to the second. Quite clearly from his comments, Judge Glasser did not and does not agree with this statutory interpretation. Moreover, as indicated hereinafter, it is irrelevant for present purposes whether Judge Glasser was or is right or wrong. This Court agrees with Judge Glasser, as indicated in our prior opinion and above, and interprets Rule 7 to prohibit *any* public statement within the areas specifically proscribed in the six subsections.[6] Therefore, all of Mr. Cutler's statements violate Rule 7 as they were made in a way likely to be publicly disseminated and fall within three of the six subsections, namely (1), (4) and (6), which proscribe comments on the character of the accused, the credibility of prospective witnesses and opinions as to the accused's guilt or innocence, the merits or the evidence in the case, respectively.[7] Mr. Cutler's statements commented on the admirable character of his client John Gotti, the zealousness of the prosecution, the incredible witnesses who would be called, and the lack of valid evidence. *See* Govt. Exhs. 48–49, 51–57, 59–59A, 62–76A. As a result, they violate Rule 7.[8]

As we pointed out in this Court's earlier opinion, *Cutler*, at 612, this is and should be the end of the inquiry regarding this second element of criminal contempt. Despite defendant's contentions, the way is not open to anyone (and particularly not to an attorney such as Mr. Cutler) to "test case" the law by wilfully defying it and thereby avoid a contempt conviction.

■ The law on this issue is well-settled. The Supreme Court in *Walker v. City of Birmingham,* 388 U.S. 307, 320, 87 S.Ct. 1824, 1832, 18 L.Ed.2d 1210 (1967) stated that protestors "could not bypass orderly judicial review of the injunction before disobeying it." *See also Howat v. Kansas,* 258 U.S. 181, 190, 42 S.Ct. 277, 281, 66 L.Ed. 550 (1922). As we also pointed out in our earlier opinion, defendant should have "at the very least, requested some clarification or guidance from the Court as to the acceptable parameters of extrajudicial speech" or objected to the order, *Cutler,* at 611, either by a motion to vacate or the appeals process. Instead, defendant's attempt for clarification was minimal and he never objected. Rather than seek guidance as to what could or could not be said, the clearest indication of an initiated discussion by Mr. Cutler occurred on May 16, 1991, when a letter signed by Mr. Cutler as well as the other defense counsel in the case was sent to the Court defending Mr. Cutler's various comments to the press. In addition to arguing that in their opinion his statements did not violate Rule 7, the signatories argued that Rule 7 was unconstitutional in that it "violates Mr. Cutler's right to fair comment under the First Amendment." Govt. Exh. 27 at 2. Further, on June 7, 1991, in response to Judge Glasser's comment to the parties that he wanted to defer the Rule 7 application until the United States Supreme Court decision in *Gentile v. State Bar of Nevada,*[9] co-defense counsel Mr. Ger-

---

6. *See* note 3.

7. *See supra* note 1, Local Criminal Rule 7(a)(1), (4) & (6).

8. It should also be noted that in his motion to dismiss, defendant challenged specific paragraphs as not being violative of any of six Rule 7 subsections on their face. He did not so challenge subparagraphs 5(m), 7(e), (h), (i), (j), 9(a), (b) & (c) and implicitly the only defense as to these subparagraphs is that they were not reasonably likely to "interfere with a fair trial" or "prejudice the due administration of justice." As

this Court has already determined that this qualification does not apply to the six subsections, we hold without further ado that these statements are violative of one or more of the six subsections of Rule 7.

9. *Gentile,* —— U.S. ——, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). This case involved the constitutionality of a free press-fair trial directive similar to Local Criminal Rule 7 and had just been argued before the United States Supreme Court on April 15, 1991. It was decided on June 27, 1991 that the rule did not violate the First Amendment.

ald Shargel, not even Mr. Cutler, explained to the Court that there were government leaks and the defense could not be expected to "to lie there doubled over." Govt. Exh. 28' at 27–31.

These arguments do not excuse defendant's behavior. As of January 9, 1991, all parties in the case were ordered by the Court to obey Rule 7. Once this directive was conveyed in the form of an order by the Court, there was no room to argue the constitutionality or validity of Rule 7 or even the wisdom of the order itself. The United States Supreme Court has consistently reiterated this principle throughout the decades. "It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished." *Howat*, 258 U.S. at 190, 42 S.Ct. at 281; *see Walker*, 388 U.S. at 321, 87 S.Ct. at 1832 ("This court cannot hold that the petitioners were constitutionally free to ignore all the procedures of the law and carry their battle to the streets. One may sympathize with the petitioners' impatient commitment to their cause. But respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom."); *see United States v. United Mine Workers of America*, 330 U.S. 258, 290 n. 56, 67 S.Ct. 677, 694, 91 L.Ed. 884 (1947), quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911) ("If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery.")

The proper recourse to challenge the order was not unilaterally to decide (as his lawyer now argues he did) that the atmosphere was so contaminated with publicity against his client that his statements perforce could have had little or no effect and certainly were not "reasonably likely" to have any effect on prospective jurors and/or the judicial process. Monday morning quarterbacking of this nature does not absolve the defendant of his wilful misconduct. He had no choice but to obey the orders of the Court and challenge the substance of those orders through the appropriate process. His failure to do so constitutes contemptuous behavior.

■ Much of defendant's case spoke to the issues of whether the statements were reasonably likely to interfere with a fair trial and were wilfully made as such, and the Government requests that the Court consider the question of whether there was a violation as though it were required that such statements be "reasonably likely" to interfere with a fair trial and wilfully made in that context to be violative. Reluctantly, the Court accedes to this request although it believes that its comments thereon are necessarily *dicta.*

With respect to the "reasonable likelihood" question, the Court finds that there was the following evidence of "a reasonable likelihood that such dissemination [would] interfere with a fair trial or otherwise prejudice the due administration of justice ..." as stated in Rule 7:

1. The evidence is indisputable that the defendant well knew that his extrajudicial statements would be well publicized and seen, heard and read by prospective jurors and in fact, may have made them for this purpose, as indicated by the following examples.

2. The evidence is indisputable that the defense team in the *Gotti* case understood the nature and implications of extensive media publicity, as indicated by the appeal it made to Judge Glasser in an effort to keep briefs filed in connection to a disqualification motion under seal.

I would remind the Court, most respectfully, that when Mr. Gotti was tried in 1986 before Judge Nickerson, between April 6 and April 28th of 1986, four weeks of jury selection that resulted in aborting the jury selection process and adjourning the case for many, many months because it was found after four weeks of voir dire that a

fair and impartial jury could not be selected because of the publicity at the time.

I suggest to you, most respectfully, that since April of 1986 the publicity has swelled dramatically.

Govt. Exh. 25 at 19: *Gotti* transcript of April 12, 1991.

It is incongruous that after supporting such arguments when it suits his client, now co-defense counsel Bruce Cutler asserts that the publicity he himself generated would not affect a potential jury pool and interfere with a fair trial.

3. The indisputable evidence also is that Mr. Cutler acknowledged the influence of the media when he informed Judge Glasser during arguments at the detention hearing that a key witness in a prior *Gotti* trial had possibly refused to testify because of "media bashing." Govt. Exh. 10B at 97: *Gotti* transcript of December 21, 1990.

4. The indisputable evidence is further that the defense team in *Gotti* sought to close the detention hearing and to have briefs and other papers sealed because of potential impact on prospective jurors.

> Because of the extraordinary media attention that this case and these defendants have received and will receive in the weeks and months ahead, any hope of a fair trial would be irretrievably lost if the [tapes] fell into the public domain. In this case the defendants' right to a fair trial substantially outweighs the public's right to access.
>
> Govt. Exh. 5 at 3: Defense counsel Gerald L. Shargel's letter to Judge Glasser dated December 16, 1990.

Judge Glasser accepted defendants' arguments and closed the hearings. Govt. Exh. 10A at 42.

5. The defendant himself made public admissions that he intentionally sought to influence "prospective veniremen out there" (i.e. prior to trial) with statements which will "help my client."

> But I, I mentioned the other cases because I think the power of the press and I've, I've really grown to appreciate and respect Anthony DeStefano from *New York Newsday.* [sic] Pete Bowles for *New York Newsday,* Lenny Buder for *The New York Times,* and Arnie Lubasch from *The New York Times* and some of the other reporters who I think do a conscientious job. Do I have selfish reasons? I have honest reasons that I don't want to alienate them, *that I want the prospective veniremen out there to feel that I mean what I say and I say what I mean, and if that can spill over and help my client, then I feel it's important for me to do that.* The press has been good to me in the past, more importantly, they've been good as a whole to John Gotti and people similarly situated in the past. (emphasis added).
>
> Govt. Exhs. 61, 61A at 4–5: Symposium at Brooklyn Law School, April 25, 1991.

6. It is indisputable that the potential effect of the publicity on the jury was understood by all. Even the media recognized Cutler's obvious intent to use the press to affect the potential jury pool.

> The forum is rarely afforded to a defendant in advance of trial on racketeering and murder charges, to have his attorney argue his case before the public-at-large and the potential jury selection pool—with an opportunity to present a compelling, sympathetic portrait of a notorious defendant as a victim of prosecutorial zeal.
>
> Govt. Exh. 24 at 6: Letter of Strook & Strook & Lavan to Judge Glasser, dated April 10, 1991.

As stated in *Gentile,*[10] "[b]ecause lawyers have special access to information through discovery and client communications, their extrajudicial statements pose a threat to the fairness of a pending proceeding since lawyers' statements are likely to be received as especially authoritative." *Id.,* —— U.S. at ——, 111 S.Ct. at 2745. The impact these statements may have on the jury pool may be irreparable. "Extensive *voir dire* may not be able to filter out all of the effects of pretrial publicity, and with increasingly wide-

---

**10.** As stated above in note 9, *Gentile v. State Bar of Nevada,* —— U.S. ——, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) involved a local rule similar to Local Criminal Rule 7 of the Eastern District of New York. Like our Rule 7, the Nevada rule outlines six subsections which proscribes statements of the type prohibited by the six subsections of E.D.N.Y. Local Rule 7.

spread media coverage of criminal trials, a change of venue may not suffice to undo the effects of statements such as those made by petitioner." *Id.*

Based on the foregoing, the Court does not have a reasonable doubt that the statements made by the defendant were reasonably likely to interfere with a fair trial and otherwise prejudice the due administration of justice, and therefore were violative of Rule 7.

The Court does not discredit the testimony of Messrs. James LaRossa and Jack T. Litman, both of whom are well-known and experienced criminal defense lawyers who testified that in light of the extensive publicity surrounding the *Gotti* case, Cutler's statements would not be reasonably likely to affect the jury pool. Transcript of Trial at 202–214; 297–310. One may not, however, overlook the inherent bias in their basically self-serving opinions. No trial lawyer worth his or her salt may objectively opine that extrajudicial statements will have, or had, no material impact on any one or more prospective jurors any more than any experienced trial lawyer may predict with any substantial degree of certainty the outcome of the great majority of jury trials. The historical evidence on both points is overwhelmingly to the contrary. Accordingly, the Court gave essentially no weight to their opinions, however honestly they may have been held by them personally.

The testimony of defendant's third "expert," a summary witness employed by defense counsel, was based on insufficient data and even if accepted, does not affect the Court's decision. The necessary inquiry is whether there was a "reasonable likelihood of interference" rather than whether there was interference in fact and actual prejudice resulting from the statements.[11]

**3. *The defendant acted wilfully and knowingly in disobeying the Court's orders.***

■ With respect to the issue of wilfulness, the Court finds the following:

1. The evidentiary items referred to in paragraphs 1 through 6 on the issue of reasonable likelihood are applicable here and are repeated herein.

2. The indisputable evidence is that Judge Glasser warned the defendant to observe Rule 7 on December 21, 1990 and that he proposed to take such steps as he regarded as being appropriate if his warning was not heeded. Govt. Exh. 10C. Defendant was therefore well-aware of Judge Glasser's concerns and by disregarding them, defendant acted wilfully.

3. The indisputable evidence also is that defendant proceeded immediately on the next day to violate this admonition in a press conference outside the Courthouse in which he alleged the Government had "thrown the constitution out the window when it comes to Mr. Gotti," that the Government witnesses were the "same bums" and its tapes the same tapes used in the previous cases against Gotti and that the tapes should not therefore present a problem to defendant's winning the case. "Holiday Inn to Gotti: Jail," *New York Daily News,* 12/22/90, Govt. Exh. 48. A clearer case for a wilful disobedience and disregard for a Court's admonition is difficult to imagine.

4. The evidence is indisputable that Mr. Cutler was aware that the Government was tracking his comments, reporting them to the Court and requesting that Cutler be sanctioned, as indicated by the prosecutor's letters to the Court dated January 4, 1991,

**11.** In summation, defense counsel argued that "[t]here are additional factors that Gentile [sic] supports that have to be looked at in looking at the objective test of whether or not there was a reasonable likelihood by the defendant's lawyer's statements of interfering with a fair trial. First is the voir dire." Transcript of Trial at 478.

This Court finds no basis for this in its reading of the majority opinion in *Gentile.* Rather, Justice Kennedy, writing for the minority, referred to the *voir dire* in support of his conclusion that there was no "real likelihood of material preju-

dice" to the trial since "not a single juror indicated any recollection of petitioner or his press conference." *Gentile,* —— U.S. at ——, 111 S.Ct. at 2730. The majority opinion, written by Chief Justice Rehnquist, holds that the "substantial likelihood of material prejudice" standard in the Nevada rule is a constitutionally permissible restriction on attorneys' free speech, *id.* —— U.S. at ——, 111 S.Ct. at 2745, in lieu of the "clear and present danger" of "actual prejudice or imminent threat" standard advanced by petitioner Gentile. *Id.* —— U.S. at ——, 111 S.Ct. at 2742.

January 15, 1991, May 9, 1991, July 22, 1991 and August 14, 1991, with courtesy copies to "All Defense Counsel." Govt. Exhs. 12, 14, 26, 33 and 39.

5. The indisputable evidence is that the defendant was ordered to "stop" on January 9, 1991 and informed that Judge Glasser was going to use all the power at his disposal to enforce his "orders." Govt. Exh. 13A: *Gotti* transcript of January 9, 1991.

6. On the following day, defendant was quoted in *New York Newsday* as saying that "Mr. Gotti had nothing to do with this. So why wouldn't there be denials?" Govt. Exh. 52: "Sources: Wiretap Weakens Case Against 'Dapper Dan'," *New York Newsday*, 1/10/91.

Thereafter, defendant continued to violate Judge Glasser's Orders on January 23rd,[12]

February 7th,[13] 23rd,[14] 28th,[15] March 7th,[16] July 14th [17] and 20th [18] by making similarly opinionated statements to *The New York Times, New York Newsday, New York Post*, and the *New York Daily News.* He also made television appearances, specifically on *60 Minutes* and *Thirteen Live* on April 7, 1991 [19] and May 7, 1991,[20] respectively, and granted an extensive interview to *Interview Magazine* which appeared in the August 1991 issue, but hit the newstands before July 22, 1991.[21]

7. The indisputable evidence is that the defendant was ordered by Judge Glasser on July 22, 1991 to obey Rule 7 and not speak to the media about the case. The Judge even offered detailed instructions for how the parties should respond to inquiries from the

12. Cutler told *The New York Times* that "[t]he Government will stop at nothing in their quest to convict Mr. Gotti, ..." Govt. Exh. 53: "Gotti, a 3–Time Winner, Could Lose a Winning Team," *The New York Times*, 1/23/91.

13. Cutler was quoted by *New York Newsday* as saying, "They tell everyone and anyone that the key to open their cell door is giving false information against Mr. Gotti." Govt. Exh. 54: "Gotti Son's Killer Was Paid Back," *New York Newsday*, 2/7/91.

14. Bruce Cutler "told reporters. [sic] 'It is a disgrace that the government would stoop this low in trying to convict someone.'" Govt. Exh. 55: "Feds Want to Ban 3 Gotti Lawyers," *Newsday*, 2/23/91.

15. Cutler was quoted as saying, "The tapes do not say what Mr. Gleeson says they say, and the conversations that he put forth are totally and deliberately taken out of context by the government." Govt. Exh. 56: "Feds: Gotti Paid Lawyers 600G on '36G Salary'," *New York Post*, 2/28/91.

16. Cutler said, "The Government deliberately and intentionally injected John Gotti's name into conversations to try and put him in a case that he had nothing to do with. This shows the ends that the Government will go to in their continuing vendetta to create cases against John Gotti." Govt. Exh. 57: "Defense Accuses U.S. of Trying to Ensnare Gotti," *The New York Times*, 3/7/91.

17. " 'They [the prosecutors] claim they want a fair fight, but that's a lie,' Mr. Cutler said on Friday. 'They would like a rigged deck. They are afraid of a fair and good fight.'" Govt. Exh. 63: "Anonymous, Sequestered Jury Asked in Gotti Trial," *The New York Times*, 7/14/91.

18. "Outside the courtroom, Gotti's lawyer, Bruce Cutler [said,] 'John Gotti is loved more than anyone else in the city, no one but the government wants to hurt John.'" Govt. Exh. 64: "Gotti Tapes Unstuck," *Daily News*, 7/20/91.

19. Cutler appeared on the show and stated that he admired John Gotti for his "[l]oyalty, honesty, integrity" and that "[t]he tapes don't say what the prosecutor says they say. They weave a little bit and they put a spin on it they [sic] way they want to put a spin on it." Govt. Exh. 59 & 59A: *60 Minutes*, 4/7/91.

20. On this program, Cutler was quoted as saying, "In my opinion, the federal government has thrown the Constitution out the window when it comes to John Gotti. And that's my opinion and I'm not, of course, blaming the judge, but that is the thrust of the federal prosecutors and it's vindictive, it's retribution, it's sour grapes," and that Gotti "hasn't committed a crime, hasn't been convicted of a crime." Govt. Exh. 62 & 62A, *Thirteen Live*, 5/7/91.

21. Cutler stated in this interview that the Government goes to jails around the country "and say[s], Tell us what you know or what you want to tell us about John Gotti. You can tell us this, you can tell us that. You're facing a hundred years for drugs, you're facing a thousand years for this, you're facing a million years for that. But if you sing our song about John Gotti, you'll be on a beach someplace, not in jail." In addition, he stated, "Millions and millions of dollars have been spent since 1977 in the government's endless attempt to frame John Gotti." Govt. Exh. 65: *Interview Magazine*, 8/91.

press. "The response ought to be, no comment. The Judge has said I cannot talk about this case, period." "Do it, that's all do it, it's simple." Govt. Exh. 34 at 10, 12: *Gotti* transcript of July 22, 1991.

8. The indisputable evidence is that thereafter defendant repeatedly continued to violate Judge Glasser's orders by making statements to the press on July 27th,[22] 28th,[23] August 2nd,[24] 3rd,[25] 4th[26] and finally, appeared on television in an hour-long interview on August 13th,[27] one month before the then scheduled trial date.

In this Court's opinion, the fourth element of criminal contempt, wilfulness by the defendant, was proven not only beyond any reasonable doubt but beyond any possible doubt.

Finally, defendant argues, but failed to show, that his statements were merely responsive to leaks reported in the media attributable to Government sources and that he was merely replying to charges of misconduct on his part.[28] Specifically, in his motion to dismiss and as noted above, defendant asserted that statements contained in subparagraphs 5(e), (g), (h), (j), 7(a), (b), (c), (d), (f), & (g) of the Order to Show Cause were proper in that they were responsive to charges of misconduct by him. On their face they clearly are not. Moreover, at trial defendant provided no direct evidence or testimony to substantiate this interpretation of his conduct.[29] The evidence reflects that this argument was raised once by Mr. Cutler, on

22. Four days after Judge Glasser's order to tell the press "no comment," Bruce Cutler held a news conference and was quoted extensively the next day in the *Daily News*, *New York Post*, *The New York Times*, and *New York Newsday*. At this conference, he was quoted as calling the prosecutors a "sick and demented lot," accused federal prosecutor John Gleeson of waging a "personal vendetta" against John Gotti and that the "federal government doesn't want a fair fight." In addition, he commented on evidence, stating, "[t]hose tapes are innocuous. Believe you me, the tapes have nothing to do with the crimes." Govt. Exhs. 66–69.

23. Cutler was quoted as saying that Gotti and other alleged mobsters "live a certain lifestyle and it is not a lifestyle of crime," that "[p]rosecutors keep indicting him because they don't like him, his friends and the way he lives," that prosecutor Gleeson has a "personal vendetta" and that he, Cutler, spent time with Gotti when he was not "locked up on some trumped-up charge." Govt. Exh. 70: "Gotti's Counselor in Furious Exile," *New York Newsday*, 7/28/91.

24. Cutler commented on tapes to be played at trial, stating, "The government takes these innocuous conversations, takes them out of context and puts a negative interpretation on them. These conversations are not evidence of any crimes, and they are meaningless." Govt. Exh. 71: "On Tape, Gotti Gripes About 'Rats'," *New York Newsday*, 8/2/91. "The conversations are not crimes; they are taken out of context by the prosecutors and deliberately given a negative connotation by the prosecutors." Govt. Exh. 72: "Gotti Discusses Representation in Secret Tapes," *The New York Times*, 8/2/91.

25. Cutler called the tapes "snippets deliberately taken out of context by the prosecutors." Govt. Exh. 73: "FBI Tapes of Reputed Mob Chief,"

*New York Newsday*, 8/3/91. "These isolated phrases don't mean what the prosecutors say they mean. They are not evidence of criminality." Govt. Exh. 74: "Words From Gotti's Mouth: Secret Tapes of Inner Circle," *The New York Times*, 8/3/91.

26. Cutler said, "John Gotti is one of the most loved men in New York City," that "[t]hese tapes are not evidence of any criminality whatsoever," and "[w]hen the whole tapes are played, not just snippets, he will be vindicated like before." Govt. Exh. 75: "Mouth Tags Boss," *New York Newsday*, 8/4/91.

27. Bruce Cutler was a guest on *9 Broadcast Plaza*, broadcast live in the New York metropolitan area on August 13, 1991. During this protracted interview, Cutler repeatedly commented on John Gotti's character, calling him a "good man" and an "honorable man," opined as to the credibility of the Government's prospective witnesses and evidence of the case, stating that the Government is "creating cases against individuals that they target and giving freedom to drug dealers and murderers if they will sing the Government's tune against the likes of John Gotti," and further commented that the federal government "threw the Constitution out the window," and that the prosecutors are "on a witch hunt" and "dealing in vendettas." Govt. Exhs. 76 & 76A at 6, 10, 4, 13 & 11.

28. Local Rule 7(a) provides that: "Nothing in this rule is intended to preclude ... any lawyer from replying to charges of misconduct that are publicly made against said lawyer."

29. Defense counsel's joint letter of May 16, 1991, which primarily attacks the constitutionality of Rule 7 and asserts that Mr. Cutler's statements were not in violation thereof, does not enunciate

the date of the last order, July 22, 1991, wherein he argued that negative statements and commentaries made about him in the context of a symposium on advocacy styles justified his comments in order to defend himself. Judge Glasser rejected this argument, reminding Mr. Cutler that those comments were irrelevant to and completely outside of the *Gotti* case.[30] To the extent that Mr. Cutler raises it as a defense here, we, too, reject this argument.

In fact, this argument makes no sense since the substance of defendant's comments emanate from attacks on his client and not himself and revolved around the validity of the evidence, the zealousness of the prosecutors and the victimization of John Gotti. For the total catalog of the statements for which Cutler is charged, *see* Govt. Exhs. 48–49, 51–57; 59–59A; 62–76A.

Not only is defendant collaterally barred from making these arguments, but they are clearly "Monday-morning" attempts to excuse Saturday and Sunday misconduct and are without support and meritless.

In short, the Court finds and renders a verdict of "guilty" on each and every one of the criminal contempt charges contained in paragraphs 5, 7, 8, 9, 10 and 11 of the Order to Show Cause that are subsequent to the unambiguous orders of January 9, 1991 and July 22, 1991. Specifically, this Court finds this defendant guilty of contempt for the following statements in the Order to Show Cause in that:

(1) subparagraphs 5(j), (k), (m), 7(d), (e) & 9(a) violate Rule 7(a)(1);

(2) subparagraphs 5(f), (n) & 9(c) violate Rule 7(a)(4); and,

(3) subparagraphs 5(d), (e), (f), (g), (h), (i), (j), (k), (*l*), (n), 7(a), (b), (c), (d), (e), (f), (g), (h), (i), (j), 9(b) & (c) violate Rule 7(a)(6).

SO ORDERED.

---

THE COURT: The article in the New York Law Journal is not directed at the case of United States versus Gotti, had nothing to do with the evidence in this case.

MR. CUTLER: I know it didn't.

THE COURT: It had nothing to do with the allegations in this case. It was a symposium about the conduct of lawyers. It had nothing to do with this case and had nothing to do about the cross in that symposium, which would give me any doubt about how to respond in terms of John Gotti or this case, okay. Nothing to do with this case, nothing.

They weren't talking about the indictment. They weren't talking about the evidence. They were talking about your style as an advocate.

MR. CUTLER: Right, representing him, though.

THE COURT: Representing him or anyone else. It's your style as an advocate.

MR. CUTLER: That I agree with.

THE COURT: The illustration you pick is not a good one....

....

What I am trying to do, I am just putting you on notice. I wanted to tell you, too, don't want to have to say it twice, the next time I have to say it I am going to ask to show cause why I shouldn't hold you in contempt.

Okay. I am putting you on notice. Stop trying this case in newspaper. Try it in the courtroom.

Govt. Exh. 34 at 4–6: *Gotti* transcript of July 22, 1991.

---

or provide any direct evidence of this defense. *See* Govt. Exh. 27.

30.     MR. CUTLER: Number two, Judge, it's hard for me, because one of the things that are coming at me, for example, I don't know if you saw the New York Law Journal just about a week and a half ago, where they had a symposium, Strook, Strook & Lavan, and they used me as an example of vigorous advocacy. And they had a judge that said it wasn't right and they had a lawyer that said it was okay.

THE COURT: He said more than that. He said he would have held you in contempt so fast your head would spin.

MR. CUTLER: I never tried a case in front of Judge Rothwax, but I have tried other cases so I am getting all kinds of feedback and it's very difficult for me to just take it and not return something. It's a very tough position that I am in where there are certain statements being made about me, about my client or clients, and I'm not quite sure how to respond.

So I'm walking a fine line. I'm trying not to violate that rule. I have read it a few times. I am trying to stay within that, but I wanted you to know, your Honor, that there may be some interviews coming out that were given two or three months ago, I should say.

THE COURT: I am aware of that.

MR. CUTLER: What do I do about the New York Law Journal, for example, you Honor?

THE COURT: Mr. Cutler?

MR. CUTLER: I am just saying, what do I do about it?