**In re FOUR SEARCH WARRANTS.**

Nos. 1:96–M–687, 1:96–M–688, 1:96–M–694 and 2:96–M–037.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 23, 1996.

**1564**

Kent B. Alexander, United States Attorney, John S. Davis, Sally Quillian Yates, David E. Nahmias, Asst. U.S. Attys., Atlanta, GA, for Government.

Peter C. Canfield, James A. Demetry, James W. Kimmell, Jr., Thomas M. Clyde, Dow, Lohnes & Albertson, Atlanta, GA, for The Atlanta Journal, The Atlanta Constitution, and WSB–TV.

Jack R. Martin, Martin Brothers, P.C., Atlanta, GA, for Richard Jewell.

### ORDER

FORRESTER, District Judge.

This matter is before the court on the Emergency Petition of *The Atlanta Journal, The Atlanta Constitution,* and WSB–TV to Intervene to Move for Access to Court Records and Proceedings. Also pending before the court is Richard Jewell's motion requesting that this court reconsider Magistrate Judge Brill's Order of September 13, 1996.

### I. STATEMENT OF THE CASE

In the early morning hours of Saturday, July 27, 1996, a bomb exploded in the midst of Centennial Olympic Park ("the Park") located in the downtown area of Atlanta, Georgia. At the time of the explosion, the Park was filled with spectators attending a concert. The resulting blast and shrapnel killed one woman, caused one man to have a heart attack, and injured over one hundred other Park visitors.

Immediately after the explosion, a security guard named Richard Jewell ("Jewell") became a media hero for his role in discovering the bomb before its detonation and assisting in the evacuation of the surrounding area. Within a few days, however, law enforcement officials began to focus their scrutiny on his possible involvement in the bombing.

On July 30 and July 31, 1996, three affidavits in support of applications for search warrants were filed under seal. Based upon the evidence contained in those affidavits, Magistrate Judge Brill issued three search warrants. In the execution of the warrants, Federal Bureau of Investigation agents searched and seized various items from Jewell's residence, pickup truck, and storage unit. A few days later, on August 3, 1996, an additional affidavit was filed under seal. Based upon the evidence contained therein, Magistrate Judge Brill issued a fourth search warrant authorizing the procurement of hair samples from the person of Richard Jewell.

In early September 1996, Jewell filed a motion seeking access to the sealed search warrant affidavits and to any sworn testimo-

ny upon which the warrants were based. On September 13, 1996, Magistrate Judge Brill issued an order granting in part Jewell's motion. The order directed the Government to release to Jewell certain portions of the affidavits. Pursuant to the order, before the affidavits were given to Jewell, the Government redacted any information that provided details of the bomb's construction and the Government's investigative techniques. In a related consent order, Jewell agreed to limit disclosure of any information released to him.

In the days following the bombing, a media frenzy swirled around all aspects of the investigation. As a result, various rumors and facts associated with the Jewell investigation have been broadcast all over the country. Even stories containing statements purporting to come from "sealed court documents" have become commonplace.

Yet, to date, no charges have been filed relating to the Centennial Olympic Park bombing. Furthermore, there is no indication that the Government is about to bring criminal charges against anyone, including Jewell. Although the FBI seized various items belonging to Jewell pursuant to the search warrants, the court learned from Jewell's counsel during an October 8, 1996 hearing that all of that property has since been returned. According to the Government, the bombing investigation itself is still ongoing. However, the return of Jewell's property combined with the Government's statements that it is pursuing other suspects, forces this court to conclude that Jewell is no longer the target of the investigation.

On September 17, 1996, *The Atlanta Journal, The Atlanta Constitution,* and WSB–TV (the "Petitioners") filed a motion to intervene in order to move for access to court records and proceedings. In particular, Petitioners seek access to the portions of the affidavits and other court records relating to the four search warrants that were released to Jewell pursuant to Magistrate Judge Brill's Order of September 13, 1996.[1] Petitioners argue that they are entitled to access to the infor-

mation released to Jewell under a constitutional right and a common law right of access to judicial records. Furthermore, Petitioners contend that under existing Eleventh Circuit law, the Government must demonstrate a "compelling interest" in order to keep the information sealed.

The Government denies that there is a constitutional right of access to sealed search warrant affidavits and argues that the common law right does not require a "compelling interest" to keep the documents sealed. The Government further contends that regardless of the standard that the court applies, release of the redacted information would damage the ongoing investigation and deter future witnesses from coming forward with new information. As a result, the Government opposes any release of the redacted affidavits to the public.[2]

On September 26, 1996, Jewell filed a motion asking this court to reconsider the Magistrate Judge's September 13, 1996 Order that released certain redacted information to Jewell. In particular, Jewell avers that the Magistrate Judge allowed too much information to be redacted. Accordingly, Jewell requests this court to review the affidavits and to release any additional information that does not relate to investigatory techniques or the bomb's construction.

## II. DISCUSSION

### A. *Motion to Intervene*

As an initial matter, two possible sources exist that might support the media's right of access to sealed judicial materials: (1) a constitutional right under the First Amendment, and (2) a common law right as found in *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). If a First Amendment right of access exists, the court can deny access only if there exists a "compelling governmental interest" and the denial of access is "narrowly tailored to serve that interest." *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606, 102

---

**1.** This court notes that Petitioners are not seeking access to any information that would reveal investigative or bomb-construction information.

**2.** Jewell indicated in a response to Petitioners' emergency motion that he does not oppose the public release of the redacted search warrant affidavits.

S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982). However, if only a common law right of access exists, then the decision to deny access rests in the sound discretion of the trial court. *Nixon,* 435 U.S. at 599, 98 S.Ct. at 1312–13.

There is no Eleventh Circuit authority addressing whether a right of access to search warrant affidavits exists. However, both the Supreme Court and the Eleventh Circuit have dealt with the issue of access to the courtroom and to judicial documents.

In *Nixon,* the Supreme Court determined that there was no First Amendment right to copy and publish court exhibits and materials. 435 U.S. at 608–10, 98 S.Ct. at 1317–19. In the same opinion, however, the Court did recognize that there was a common law right of access to inspect and copy judicial records and documents. *Id.* at 597, 98 S.Ct. at 1311–12. A few years later, in its plurality opinion in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the Court found that there was a qualified First Amendment right to attend criminal trials. In *Globe Newspaper,* the Supreme Court reaffirmed this right to an open criminal trial. 457 U.S. at 598, 102 S.Ct. at 2615–16. In so doing, the Court stated that denial of access to a criminal trial would violate the First Amendment unless the denial was "necessitated by a compelling governmental interest, and [was] narrowly tailored to serve that interest." *Id.* at 606–07, 102 S.Ct. at 2619–20.

In *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423 (5th Cir.1981),[3] the Fifth Circuit applied *Nixon* and determined that there was a common law right of access to trial exhibits. Before analyzing the common law right, the court concluded that a constitutional right of access to trial exhibits did not

exist. *Id.* at 426. In its discussion, the court stated that nothing in *Richmond Newspapers,* which narrowly dealt with the issue of the right to attend a trial, affected the court's conclusions. *Id.* at 428. *See also U.S. v. Gurney,* 558 F.2d 1202, 1209 (5th Cir.1977) (no First Amendment right of access to court documents that were not part of public record, access decision within judge's discretion), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978).

These holdings are all binding authority on the Eleventh Circuit and this court. As a result, in determining the degree of access to court documents, the Eleventh Circuit has applied the common law test articulated in *Nixon* and *Belo Broadcasting.* In *Newman v. Graddick,* 696 F.2d 796 (11th Cir.1983), for example, the Eleventh Circuit dealt with the question of whether the media could have access to future court hearings and lists of prisoners submitted to the court as part of a continuing decree enforcement process. In analyzing the media's requests, the court applied the Supreme Court's *Globe Newspaper* First Amendment test to the issue of access to court hearings. *Id.* at 802. However, when determining if the press could inspect and copy the prisoner lists, which were court documents, the court applied the common law right of access standard. *Id.* at 802–03. Similarly, in *U.S. v. Rosenthal,* 763 F.2d 1291, 1294 (11th Cir.1985), the Eleventh Circuit applied the *Nixon* common law standard to determine whether a right existed to copy wiretap information that had been introduced as evidence at trial. In accordance with these decisions, in *U.S. v. Kooistra,* 796 F.2d 1390, 1391 n. 1 (11th Cir.1986), the court noted in dicta that the lower common law standard would apply to issues of access to documents filed with the court.[4]

---

3. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

4. Petitioners contend that the court should apply the "compelling interest" test to this case even if the court does not find that a constitutional right of access exists.

In *Wilson v. American Motors Corp.,* 759 F.2d 1568, 1570–72 (11th Cir.1985), for example, the Eleventh Circuit court applied a "compelling in-

terest" standard to determine whether the petitioner could have access to the transcript, papers, and docket in relation to a closed post-trial settlement. Contrary to prior authority, however, the Eleventh Circuit failed to draw a distinction between a record of what happened at the trial and court documents. Instead, the court applied the same standard to the question of access to the transcript as well as to the issue of access to the court papers.

In addition, although appearing to use the common law right of access language, the Elev-

### 1. First Amendment Right

■ As stated *supra*, there are no Eleventh Circuit cases that establish any First Amendment right of access to sealed search warrant affidavits. The circuits that have dealt with the issue are split as to whether such a right exists. *Compare Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir.1989) (no right of access) *with In re Search Warrant for Secretarial Area*, 855 F.2d 569 (8th Cir.1988) (finding a First Amendment right of access). The most recent decision addressing this issue, which the Fourth Circuit issued in *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir.1989), agreed with the rationale of the Ninth Circuit and held that the press did not have a First Amendment right of access to search warrant affidavits.[5]

There is a two-part test for determining whether a First Amendment right of access exists. First, the court must determine "whether the place and process have historically been open to the press and general public." *Press–Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 8, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1 (1986). Second, the court must inquire "whether public access plays a significant role in the functioning of the particular process in question." *Id.* Both the Ninth Circuit and the Fourth Circuit concluded that a First Amendment claim for access to sealed search warrant affidavits failed the first prong of this test. These courts' rationale was that the search warrant application process was traditionally closed to the public. *Goetz*, 886 F.2d at 64; *Times Mirror Co.*, 873 F.2d at 1214. The process was historically conducted *ex parte* in order to prevent the subject of the search from learning about the application for the warrant and destroying evidence. *Goetz*, 886 F.2d at 64 (citing *Franks v. Delaware*, 438 U.S. 154, 169, 98 S.Ct. 2674, 2683, 57 L.Ed.2d 667 (1978)). In addition, the Ninth Circuit also determined that a request for sealed warrant materials also failed the second prong of the test. The Ninth Circuit concluded that public access to the search warrant materials, just as public access to grand jury proceedings, would hinder rather than assist in the functioning of the process. *Times Mirror Co.*, 873 F.2d at 1215.

This court is persuaded by the reasoning of both of these circuits and accordingly concludes that there is no First Amendment right of access to search warrant affidavits.

### 2. Common Law Right

■ In the absence of a constitutional right of access, the court does find that the common law right to inspect and copy judicial records and documents applies to the present case. *See Nixon*, 435 U.S. at 597, 98 S.Ct. at 1311–12; *Newman*, 696 F.2d at 803. The common law right of access, however, is not absolute. *Nixon*, 435 U.S. at 597, 98 S.Ct. at 1311–12. "As with any other form of access, it may interfere with the administration of justice and hence may have to be

---

enth Circuit in *Wilson* cited to the First Amendment standard articulated in *Newman*. *Id.* at 1570–71. In contrast, the Eleventh Circuit in *Newman* had applied the First Amendment test, taken from *Globe Newspaper*, only to the right to attend hearings. *Newman*, 696 F.2d at 800–02. In applying this standard to court documents in *Wilson*, therefore, the Eleventh Circuit neglected the common law test that it had applied to the prisoner lists in *Newman*. *See also Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013 (11th Cir.1992) (citing *Wilson* and applying First Amendment test to the question of a common law right to access settlement records).

*Moody v. U.S.*, No–90–8177, 908 F.2d 979 (11th Cir. June 28, 1990) (per curiam), is an unpublished opinion that is not binding precedent. *See* 11th Cir.R. 36–2. The court further notes that the opinion was addressing, in part, the issue of access to judicial proceedings when it applied a "compelling interest" standard. The opinion expressly did not address the issue of access to search warrant affidavits. *Moody*, slip op. at 5 n. 5.

Of course, *Nixon* and the earlier Fifth Circuit cases are binding precedent on this court. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981). As a result, the court will follow the common law analysis articulated in them and applied in such cases as *Newman* and *Rosenthal*.

**5.** Those district courts in the Eleventh Circuit which have discussed the issue have also found no First Amendment right of access to sealed search warrant affidavits. *See In re Macon Telegraph Pub. Co.*, 900 F.Supp. 489, 491–92 (M.D.Ga.1995); *In re Search of Office Suites for World and Islam Studies Enterprise*, 925 F.Supp. 738, 741 (M.D.Fla.1996).

curtailed." *Newman,* 696 F.2d at 803. As a result, a district court must balance this presumptive right of access against important competing interests. *Rosenthal,* 763 F.2d at 1294. Among the factors to be considered by the court when balancing the interests are whether the records are sought for improper purposes, "whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records." *Newman,* 696 F.2d at 803 (citing *Nixon,* 435 U.S. at 598–603 & n. 11, 98 S.Ct. at 1312–15 & n. 11). The proper balancing of these factors is in the sound discretion of the trial court. *Nixon,* 435 U.S. at 599, 98 S.Ct. at 1312–13; *Belo Broadcasting,* 654 F.2d at 430; *Newman,* 696 F.2d at 803; *Rosenthal,* 763 F.2d at 1295.

■ The Government has advanced a number of reasons for keeping the search warrant affidavits sealed:

(1) Release of the information would jeopardize the ongoing investigation into the bombing. *See U.S. v. Valenti,* 987 F.2d 708, 714 (11th Cir.) (Government has compelling interest in protection of a continuing investigation), *cert. denied,* 510 U.S. 907, [114 S.Ct. 289, 126 L.Ed.2d 238] (1993);

(2) A court order directing the release of the affidavit information to the media in this case could lead to a dangerous precedent that would jeopardize future investigations;

(3) Release of the names of witnesses in the affidavits will lead to intense media scrutiny that will harass present witnesses and deter future witnesses from coming forward.

Although it is true that no case has been found where search warrant materials did not remain sealed during the pendency of a criminal investigation, the circumstances of this case are unique. First, Petitioners are only seeking the limited information that has been released to Jewell. They are not seeking details regarding the explosive device or investigatory techniques. Second, the court believes that the criminal investigation into Jewell's participation in the bombing has ended. Although the Government seized various items belonging to Jewell pursuant to the search warrants, the court has since learned that all of the seized property, including firearms, have been returned. From the return of this property and the official statements of the Justice Department that it is pursuing other leads, the court infers that no charges are currently pending against Jewell and that he is no longer considered a suspect. As a result, the court concludes that the Jewell chapter of the Centennial Olympic Park bombing investigation has been closed. Most of its details have now become merely a historical footnote to the ongoing investigation. Third, much of the information in the affidavits which Petitioners seek has already been made widely available to the public. Jewell and his counsel have been provided redacted affidavits. In addition, the media has already reported various details of the Government's investigation and the sealed affidavits. These stories have apparently been based on Government leaks. *See, e.g.,* Thomas Heath & William Booth, *Bombing Suspect Allegedly Said He Wanted Big Role at Games, Washington Post,* August 2, 1996, at A14 ("The alleged declaration, quoted in a sealed affidavit that accompanied the search warrant ...."). Finally, Jewell himself does not oppose the release of the information in the redacted affidavits. Therefore, the court concludes that the Government's interest in protecting an ongoing investigation would not be compromised by the release of the historical information pertaining only to a known former suspect.[6]

---

**6.** In the typical case where whole search warrant affidavits should remain sealed during an ongoing investigation, there are details in the affidavits that, if released, would clearly jeopardize the successful completion of the investigation. *See Macon Telegraph Publishing Co.,* 900 F.Supp. at 492 (investigation ongoing, but suspects listed in affidavits not known to public); *In re Search Warrant for Secretarial Area–Gunn,* 855 F.2d at 570–71 (mass investigation of fraud and bribery, unknown suspects contained in affidavits); *Matter of Office Suites for World & Islam Studies,* 925 F.Supp. at 743 (sealed affidavits contained names of suspects being investigated in addition to those known to public); *In re Flower Aviation of Kansas,* 789 F.Supp. 366, 368 (D.Kan.1992) (names of suspects in affidavits were not known

In addition, the court does not find compelling the Government's fear that this decision could lead to a dangerous precedent that would jeopardize future investigations. As the court stated above, the circumstances of this case are unique. Furthermore, the court may only act on the facts before it and cannot attempt to predict how other courts will react when facing different circumstances in the future.

Finally, the court does not believe that the Government's fear of a possible "chilling" effect on future witnesses is a sufficiently compelling reason to keep these affidavits sealed. As the Magistrate Judge succinctly noted:

> Witnesses who come forward in any high profile investigation no doubt realize that, at some point, their identity and testimony may be made public at a hearing or trial and that they may receive some unwanted attention from the news media at that time. Therefore, it is unlikely that a disclosure of some witness information would have any deterrent effect on potential witnesses in addition to that which already exists.

September 13, 1996 Order at 10.

Balanced against these governmental interests, Petitioners have advanced several public interests in favor of the release of the information in the affidavits, including: the public's right to understand the legal process, the preservation of the integrity of the fact-finding process, and the furtherance of the appearance of fairness. *See Newman,* 696 F.2d at 801; *Globe Newspaper Co.,* 457 U.S. at 606, 102 S.Ct. at 2619–20. The court agrees that these are important interests that support the release of most of the information contained in the affidavits. *See Matter of Application & Affidavit for a Search Warrant,* 923 F.2d 324, 330–31 (4th Cir.1991). Further, important questions have been raised about the response of the constabulary to the information it possessed before the bomb exploded, and the public interest is served by knowing all that can be revealed about this subject. Finally, there is the question of Mr. Jewell's reputation and his ability to obtain employment in his chosen field, and the public judgment of him and his actions is best served by full knowledge of the information that led to his being a suspect.

Accordingly, the court GRANTS IN PART Petitioners' motion and DIRECTS that redacted affidavits, in accordance with the court's discussion *infra,* be released for public inspection.

### B. *Motion for Reconsideration*

 Jewell requests that this court reconsider the court order that Magistrate Judge Brill issued on September 13, 1996. Jewell based his original motion seeking release of sealed information on the premise that he had a right to know whether there was probable cause in order to determine whether to file a Fed.R.Crim.P. 41(e) motion for return of property or a *Bivens* civil action for damages. Pursuant to the motion, the Magistrate Judge released redacted affidavits. Since that time, however, the Government has returned all of the seized property. As a result, a question has arisen whether Jewell still has standing to seek reconsideration of the Magistrate Judge's Order.

During the October 10, 1996 hearing, Jewell's counsel cited to the court the case of *Weeks v. U.S.,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), for the proposition that he could use a motion to return his property as a vehicle to challenge also the deprivation of his constitutional rights. The court notes that *Weeks* was decided before Rule 41(e) was enacted and before the Supreme Court decision in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The court also notes that a better view might be that there would be a "case or controversy" left in this case addressable under Rule 41 only if Jewell were charged and the exclusionary rule came into play.

As the court cannot find support for the filing of a Rule 41(e) motion after all seized property has been returned, the court concludes that Jewell's motion for reconsideration has become moot.

---

to public, and some evidence had been destroyed

between execution of warrants).

## C. Sealed Material to be Released

■ In relation to the consideration of Petitioners' intervention, however, the court believes that Magistrate Judge Brill was overly cautious in redacting the affidavits. In particular, the court concludes that information contained in the affidavits was redacted even though it did not relate to the protection of the governmental interests articulated in the Magistrate Judge's Order. Specifically, the court notes that the truly compelling interest in this case is the identification and prosecution of the actual perpetrator of the Centennial Olympic Park bombing. As a result, any information in the affidavits that, if released, would make that task more difficult should clearly remain sealed from the public view. This information falls primarily into two categories: (1) information that would disclose the government's investigative methods, and (2) details concerning the explosive device.

In order to protect only these articulated interests, and not historical facts relating merely to Jewell, the court exercises its supervisory control over documents in its possession and directs that the affidavits be redacted as follows:

Certain information in paragraphs 28 and 31 of the apartment affidavit, for example, relates to investigative techniques which, if released, might result in the destruction of evidence. Accordingly, the court directs that these portions of the affidavits remain under seal.

Other portions of the affidavits, such as paragraphs 6 and 13 of the apartment affidavit, contain details about the composition of the bomb. These factual details, if known, could also provide investigative techniques information and lead to the destruction of evidence. As a result, the court directs that these portions also remain under seal.

Furthermore, certain core details of the bomb need to be kept under seal so the Government can evaluate the credibility of any subsequent confessions or witness testimony. Information of this type, for example, is contained in paragraphs 10 and 11 of the apartment affidavit. Accordingly, the court directs that this type of information also remain under seal.

Petitioners have requested that they be given access to the lists of items seized from Richard Jewell pursuant to the four search warrants. The government contends, and this court agrees, that these lists should remain sealed. As stated *supra*, the court believes that the compelling interest in the present case is the identification and prosecution of the perpetrator. The lists of items seized, if made public, would provide details that would reveal the investigative techniques of the Government. As a result, if released, the lists could lead to the destruction of evidence and the frustration of the Government's ongoing investigation. Accordingly, the court directs that these lists remain under seal.

## D. Witness Names

■ Finally, the Government has requested that the court seal the names of the witnesses contained in the affidavits. In the exercise of its discretion, the court finds that the names of witnesses in the affidavits that to this day have not been released into the public domain should remain sealed.

When the Government files its applications for search warrants, it has an absolute right to keep the names of its witnesses confidential at that time. As a result, when filing its requests for the present four search warrants, the government could have listed the witnesses as "confidential informants." If the government had used its prosecutorial prerogative and not included the names, then even if no charges were ever filed against Jewell, the real names of the confidential informants would have remained hidden. *Cf. Matter of Search of 1638 E. 2nd St., Tulsa, Okl.,* 993 F.2d 773, 775 (10th Cir.1993) (properly invoked "informer's privilege" trumps common law right of access), *cert. denied,* 510 U.S. 870, 114 S.Ct. 196, 126 L.Ed.2d 154 (1993); *Hoffman v. Reali,* 973 F.2d 980, 987 (1st Cir.1992) (under "informant's privilege," government need not disclose identity of person who furnished information about possible violation of law); *Roviaro v. U.S.,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

However, the Government in the present case did not choose to exercise its prerogative when filing the affidavits. At the Octo-

ber 8, 1996 hearing on this motion, the Government represented to the court that it is the usual practice in this district for it to reveal all the real names of witnesses to the magistrate judge who determines whether probable cause exists. The Government offered the court two reasons for this full disclosure. First, the Government has an interest in supplying all available information to the magistrate judge. Second, there is a custom in this district that sealed search warrant materials will remain under seal until the conclusion of an investigation. Consequently, the Government acted, when it disclosed all the names in the affidavits, in reliance on an established practice.

Furthermore, the court notes that unlike a case of local interest covered by a relatively few members of the local media, the world media has an interest in this case and it further notices that the unrestrained behavior of the world media at the outset of the investigation was truly frightening. Recollections of the images of the sprawling press camp that first established itself outside of Jewell's apartment in late July might in this case deter witnesses from coming forward, and, if it could have been anticipated, might very well have counseled a more circumspect relationship between the law enforcement establishment and the press.

The court believes that the Government should not be punished now due to its reliance on a customary practice in view of the reasonableness of its concerns in this case. The court therefore concludes that treating these witness names as if they were listed in the affidavits as "confidential informants" would be the appropriate course of action.

In accordance with this conclusion, the court conducted an electronic database search in order to determine which witness names were already in the public domain. After a thorough search, the court found only the name of Tom Davis had been reported in the media. As to all other names contained in the affidavits that are not in the public domain, the court directs that the names and any identifying information in the affidavits be redacted. Furthermore, as many of these names have already been released to Jewell and his attorneys, the court orders them to continue to abide by their earlier consent decree in regard to these sealed names.

## III. CONCLUSION

Accordingly, Jewell's motion for reconsideration is DENIED. The Petitioners' motion is GRANTED IN PART and DENIED IN PART. Attached to this Order, under seal, are copies of the affidavits with specified portions highlighted. The Government is DIRECTED to prepare redacted affidavits in accordance with the ones attached under seal and to release them for public inspection. The Court further DIRECTS that the imposition of this Order be stayed for five (5) business days or unless the Government files a Notice of Appeal, in which event the affidavits shall remain sealed until the circuit court has acted.